



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**FLINT DIVISION**



**JAN 06 2026**

U.S. DISTRICT COURT
FLINT, MICHIGAN

**MAREK PETRYKOWSKI**　　　)
　　　　　　　　　　　　　　　)
Plaintiff　　　　　　　　　　　)
　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　)
**JDW INTERNATIONAL INC.**　　)
**(Ontario Corporation No. 1001407417),**　)
**successor by amalgamation to**　　)
**2051782 Ontario Ltd.**　　　　　)
　　　　　　　　　　　　　　　)
Defendant　　　　　　　　　　)

Case:2:26-cv-10040
Judge: Michelson, Laurie J.
MJ: Ivy, Curtis
Filed: 01-06-2026 At 04:39 PM
CMP PETRYKOWSKI V. JDW INTERNATIONA
L INC

# CIVIL COMPLAINT AND JURY DEMAND

**COMPLAINT FOR:**

(1) Violations of the FMCSA Truth-in-Leasing Regulations, 49 C.F.R. § 376.12(d), (f), (g), (h),

(i), and related provisions

(2) Concealment

(3) Breach of Contract

(4) Declaratory and Injunctive Relief

Plaintiff, **MAREK PETRYKOWSKI**, appearing *pro se*, for his Complaint against Defendant

**JDW INTERNATIONAL INC.**, alleges as follows:

1

## I. INTRODUCTION

[1]   This action arises from Defendant JDW INTERNATIONAL INC.'s interstate motor-carrier operations conducted under U.S. Department of Transportation ("USDOT") authority and its violations of the Federal Motor Carrier Safety Administration ("FMCSA") Truth-in-Leasing Regulations ("TILR"), 49 C.F.R. Part 376.

[2]   Defendant engaged in fraudulent misrepresentations concerning owner-operator compensation and deductions, including fuel and insurance charges; concealed freight revenue paid in U.S. dollars (USD); manipulated currency exchange rates; refused to provide freight-rate and settlement documentation; and systematically underpaid Plaintiff, a percentage-based owner-operator.

## II. JURISDICTION

[3]   This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States (U.S.), including the FMCSA TILR, 49 C.F.R. Part 376, promulgated pursuant to federal statutes governing motor carriers engaged in interstate commerce. Plaintiff seeks relief under 49 U.S.C. § 14704(a)(2), which provides a private right of action to enforce violations of federal motor-carrier statutes and regulations. The federal duties at issue are created by federal law, and Plaintiff's related state-law claims arise from independent contractual and common-law duties.

[4]   Plaintiff does not invoke diversity jurisdiction under 28 U.S.C. § 1332, as both Plaintiff and Defendant are citizens of Canada. Federal question jurisdiction under 28 U.S.C. § 1331

independently and sufficiently confers subject-matter jurisdiction over Plaintiff's federal claims. Pursuant to 28 U.S.C. § 1367(a), the Court also has supplemental jurisdiction over Plaintiff's related state-law claims, including fraud, fraudulent concealment, negligent misrepresentation, breach of contract, unjust enrichment because those claims arise from the same nucleus of operative facts as the federal claims—namely Defendant's interstate motor-carrier operations and compensation and settlement practices governed by 49 C.F.R. Part 376. The FMCSA TILR apply to transportation performed in U.S. interstate commerce, regardless of the parties' citizenship.

### III. PERSONAL JURISDICTION

[5]     This Court has personal jurisdiction over JDW INTERNATIONAL INC. because it purposefully availed itself of the privilege of conducting business in the United States, including Michigan, by operating as an interstate motor carrier under U.S. Department of Transportation ("USDOT") and Motor Carrier ("MC") authority, hauling freight into, out of, and through Michigan, and deriving substantial revenue from U.S. interstate transportation. This action arises directly out of those forum-directed activities.

[6]   Plaintiff's contractual relationship was originally with 2051782 Ontario Ltd. ("OLD JDW"), which operated as a federally authorized motor carrier under USDOT No. 1553948 and MC No. 576999-C, engaging in interstate transportation throughout the United States, including Michigan. Effective November 6, 2025, OLD JDW amalgamated into JDW INTERNATIONAL INC. ("NEW JDW"), which is sued herein as successor in interest. Plaintiff performed approximately 99% of his contracted transportation services in the United States under JDW's federal operating authority.

[7]   By operating under USDOT and MC authority and dispatching Plaintiff to haul freight in

U.S. interstate commerce, OLD JDW was required to comply with U.S. federal motor-carrier law,

including the FMCSA Truth-in-Leasing Regulations, 49 C.F.R. Part 376, and is subject to civil

liability for violations pursuant to 49 U.S.C. § 14704(a)(2). OLD JDW thereby voluntarily

submitted itself to U.S. federal transportation laws, jurisdiction, and enforcement.

[8]   Plaintiff's compensation was calculated as a percentage of gross revenue generated by

transportation performed under Defendant's federal operating authority. Defendant's statutory

settlement and disclosure obligations under 49 C.F.R. § 376.12(g) apply irrespective of their

internal accounting practices.

[9]   Exercising personal jurisdiction over Defendant comports with due process and traditional

notions of fair play and substantial justice because Defendant purposefully directed commercial

activity into the United States and Michigan, and Plaintiff's claims arise directly from that activity.

Defendant's contacts with Michigan were continuous, systematic, and purposefully directed, and

it reasonably should have anticipated being haled into court in this forum.

[10]   By operating under U.S. USDOT/MC authority and maintaining active corporate

registration and operations in Ontario, Defendant has voluntarily subjected itself to regulation and

jurisdiction in both the United States and Ontario.

## IV. VENUE

[11]   Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b)(2) and §

1391(c) because a substantial part of the events or omissions giving rise to Plaintiff's claims

occurred within this District, and because Defendant is a foreign corporation subject to personal jurisdiction in this District.

## V. PARTIES

**Plaintiff**

[12]   Plaintiff, **Marek Petrykowski**, is a truck owner-operator who has hauled freight under Defendant JDW's USDOT and MC interstate operating authority.

**Corporate Defendant**

[13]   Defendant JDW INTERNATIONAL INC. (Ontario Corporation No. 1001407417) ("JDW International" or "NEW JDW") is an Ontario corporation and the amalgamated successor **to** 2051782 Ontario Ltd., formerly doing business as JDW International ("OLD JDW"), and 1001385550 Ontario Inc., an Ontario numbered corporation incorporated on October 15, 2025. The amalgamation became effective on November 6, 2025.

[14]   Pursuant to the Ontario Business Corporations Act and governing law applicable to corporate amalgamations, NEW JDW continued the business operations of its predecessor entities and, as a matter of law, became vested with all of their rights, obligations, and liabilities. JDW INTERNATIONAL INC. is therefore the successor in interest to OLD JDW and is properly sued herein.

[15]   Although NEW JDW's registered office address is 2365 Dixie Road, Mississauga, Ontario, L4Y 0E6, Canada, and its registered directors' address for service is 3950 Rue Hickmore, Unit 105, Saint-Laurent, Quebec, H4T 1K2, Canada, the principal location where the business is

conducted remains the same as that of OLD JDW, namely 21 Ube Drive, Sarnia, Ontario, N7W 1B6, Canada.

[16]   Unless the context requires otherwise, 2051782 Ontario Ltd. and JDW International Inc. are collectively referred to as 'JDW'. Where necessary, the Plaintiff refers to 'OLD JDW' or 'NEW JDW' to identify acts occurring before or after the amalgamation.

## VI.  FACTUAL ALLEGATIONS

### A. The Parties' Owner-Operator Relationship

[17]    On March 4, 2019, Plaintiff entered into a written owner-operator lease agreement ("the Agreement") with Defendant OLD JDW to haul freight in U.S. interstate commerce under OLD JDW's United States Department of Transportation ("USDOT") and Motor Carrier ("MC") operating authority. Plaintiff's loads routinely crossed U.S. state lines and international borders pursuant to JDW's USDOT/MC authority.

[18]   Under the Agreement, Plaintiff was a percentage-based independent contractor entitled to receive seventy-five percent (75%) of the gross revenue generated on each load, including loads fully performed by Plaintiff and loads partially performed by Plaintiff where compensation was to be allocated proportionally.

[19]   Regardless of how JDW labeled the Agreement or Plaintiff's status, the lease was entered into between Plaintiff and a federally authorized motor carrier for the purpose of hauling freight in U.S. interstate commerce, and therefore constitutes a motor-carrier lease governed by the FMCSA TILR, 49 C.F.R. Part 376.

6

[20]   The Agreement failed to disclose material terms required for transparent settlement under 49 C.F.R. § 376.12, including but not limited to:

(a) the currency in which freight bills were issued or paid;

(b) the existence, calculation, and allocation of any fuel surcharge;

(c) the method, rate, or source of any currency-exchange conversion applied to Plaintiff's compensation;

(d) truck and health insurance policies; and

(e) all other deductions impacting Plaintiff's compensation.

## B. Defendant's Representations Concerning Currency and Revenues

[21]   Throughout the contractual relationship, Defendant OLD JDW, acting through its officers and agents in positions of actual authority, affirmatively and repeatedly represented to Plaintiff that:

(a) almost all customers paid freight charges in Canadian dollars (CAD);

(b) if any customer paid in United States dollars (USD), JDW would convert the amount using its bank (Royal Bank of Canada, "RBC") exchange rate in effect on the settlement date;

(c) the flat $75 local pickup and/or delivery fee deducted from Plaintiff's compensation was always charged in Canadian dollars (CAD), regardless of the currency in which the customer paid JDW; and

(d) there was no need for Plaintiff to inspect freight bills or rate confirmations because customer payments and settlements were almost "always in CAD."

7

[22]  Plaintiff reasonably relied on these representations in accepting loads, calculating expected compensation, and continuing to operate exclusively under JDW's USDOT and MC authority. Defendant made these representations knowing them to be false, or with reckless disregard for their truth, and with the intent to induce Plaintiff's reliance, while exercising exclusive control over customer billing, currency conversion, settlement calculations, and access to freight documentation. Plaintiff suffered financial harm as a direct and proximate result of this reliance.

## C. Plaintiff's Repeated Requests for Freight Bills and Supporting Documents

[23]  In or about August 2022, Plaintiff overheard a conversation among other owner-operators indicating that certain JDW customers paid freight charges in USD. As a result, in early September 2022, Plaintiff formally requested access to freight bills, rate confirmations, and customer invoices from Defendant JDW, as required by 49 C.F.R. § 376.12(g).

[24]  During the first in-person meeting in or about September 2022, JDW reiterated prior representations that almost all customers paid freight charges in CAD, that payments in USD were "rare," and that operating a dual-currency settlement system would be unreasonable. JDW further represented that, in the event a customer paid in USD, the RBC exchange rate would be applied in settling Plaintiff's compensation. Defendant produced only a limited and selectively chosen set of documents relating to a small number of loads, while refusing to provide comprehensive access to freight bills, rate confirmations, or customer invoices. The manner, volume, and organization of the documents presented made it impossible for Plaintiff to review the approximately 1,260 loads he had hauled during the relationship within any reasonable timeframe.

[25]  Plaintiff thereafter made multiple follow-up requests to examine the required documentation. JDW, acting through its authorized officers and agents responsible for records and settlements,

refused to provide meaningful access, instead imposing restrictive conditions, including weekday-only availability, limited viewing time, and advance notice requirements of at least one week, which effectively denied Plaintiff access to the records to which he was entitled under 49 C.F.R. § 376.12(g).

[26]   The limited and obstructed document production provided by JDW in September 2022 did not reveal any discrepancy in Plaintiff's compensation and did not disclose the currency in which customers actually paid. Defendant expressly represented that almost all customers paid in CAD and that any rare payments made in USD would be converted using RBC's posted exchange rate, thereby explaining the absence of currency notation on the documents shown. JDW further restricted who could produce settlement records and limited production to restricted weekday hours, rendering comprehensive review of the approximately 1,260 loads impracticable without Plaintiff forfeiting active hauling work.

[27]   The documents shown to Plaintiff did not include freight bills, customer invoices, or proof of the currency in which customers paid, nor did they include documentation showing the exchange rate applied to any USD-paid loads.

[28]   JDW refused to permit Plaintiff to copy, photograph, scan, or meaningfully transcribe the documents presented. The restrictions imposed by Defendant made a comprehensive review of the approximately 1,260 loads impracticable without forfeiting active hauling work.

[29]   As a result, Plaintiff had no practical means to verify the accuracy of his compensation or the currency in which customers paid. Given JDW's exclusive control over records and its

affirmative representations, Plaintiff reasonably continued to rely on the information provided and had no basis to suspect systematic underpayment at that time.

### D. Discovery of USD Revenue and Improper Exchange Rates on Substantial Portion of Loads

[30]  On January 16, 2024, Plaintiff received an email from Defendant JDW's accounting department disclosing for the first time that a load had been paid in USD and settled using an exchange rate materially below the prevailing RBC rate. This communication constituted the first concrete information available to Plaintiff indicating that a substantial portion of Defendant's loads were paid in USD and that undisclosed, below-market exchange rates were being applied in settling Plaintiff's compensation.

[31]  Following this discovery, Plaintiff made multiple follow-up requests to examine settlement records, freight bills, fuel invoices, and currency/exchange-rate documentation necessary to verify his compensation. JDW, acting through its authorized officers and accounting staff, refused to provide meaningful access to such records and instead imposed restrictive conditions, including weekday-only availability, limited viewing time, and advance notice requirements of at least one week, which effectively denied Plaintiff practical access to the records.

[32]  Despite having knowledge that USD revenues and below-bank exchange rates were being applied, JDW continued to withhold settlement documentation and currency/exchange-rate information. Defendant knew, or had reason to know, that without access to complete records, Plaintiff could not verify the accuracy of his compensation. Although JDW stated that fuel invoices would be forwarded by email, it failed to do so.

[33]   After repeated unsuccessful attempts to schedule a document-review appointment, Plaintiff made additional requests to JDW's accounting and management staff to obtain the required documentation. JDW refused to provide copies of freight bills, fuel invoices, insurance-premium calculations, and exchange-rate documentation, stating that it could not provide such documentation for one owner-operator without providing it to all others, and ultimately failed to produce the requested records.

[34]   On or about October 6, 2024, Plaintiff attempted to review records at JDW's offices. JDW instructed Plaintiff to attend an alternate location outside the office. Concerned for safety and impracticality of accessing records at the off-site location, Plaintiff declined.

[35]   Subsequent attempts to obtain documentation were similarly unsuccessful. JDW continued to deny access to records concerning Plaintiff's compensation, including freight bills, fuel invoices, exchange rates, customer payment currency, truck-insurance premiums, and health-benefit deductions. Refusal to provide the requested documentation effectively coerced Plaintiff to continue hauling under the existing, undocumented compensation practices.

[36]   Plaintiff explained that he could not immediately leave the contractual relationship due to market conditions in the trucking industry and did not agree to waive his rights to documentation or lawful compensation. Defendant permitted Plaintiff to continue hauling loads, but the refusal to provide required documentation persisted.

[37]   From late 2024 onward, Plaintiff actively sought alternative employment but was unable to secure another position due to economic conditions in the trucking industry in both Canada and the United States.

[38] Plaintiff began preparing documentation to commence legal proceedings against JDW, aware of applicable statutes of limitations.

[39] On November 29, 2025, Plaintiff learned during a safety meeting that OLD JDW had been sold. Upon obtaining Ontario corporate profile records on December 6, 2025, Plaintiff discovered that OLD JDW had become inactive by amalgamation effective November 6, 2025.

[40] Plaintiff further discovered that, on December 17, 2024, shortly after placing JDW on notice of statutory violations, a new Ontario entity using the business name JDW INTERNATIONAL was registered. The timing and circumstances of this registration support Plaintiff's allegation that Defendant undertook corporate restructuring after receiving notice of Plaintiff's claims.

[41] Defendant conditioned continued dispatch on Plaintiff's acceptance of undocumented compensation practices in violation of 49 C.F.R. § 376.12(g). This conduct constituted economic coercion and interference with Plaintiff's statutory rights.

**E. Scope of Missing Information**

[42] From the commencement of Plaintiff's contractual relationship through December 6, 2025, Plaintiff hauled approximately 1,600 loads under Defendant JDW's USDOT and MC operating authority.

[43] For virtually all of those loads, Plaintiff—like other owner-operators under Defendant's authority—was not provided with the following documents or information:

(a) copies of freight bills;
(b) rate confirmations;
(c) customer invoices or proof of amounts billed and paid;

(d) fuel surcharge disclosures;

(e) documentation identifying the currency in which customers paid;

(f) exchange-rate records used to convert any U.S.-dollar revenue;

(g) fuel purchase invoices or supporting fuel-cost documentation; and

(h) documentation explaining how truck insurance premiums and health-benefit deductions were calculated and allocated to Plaintiff.

[44] Defendant JDW's failure to provide this information prevented Plaintiff from independently verifying the accuracy of his compensation and deductions, in direct contravention of 49 C.F.R. § 376.12(g) and Defendant's contractual and common-law duties. Without access to these records, Plaintiff had no practical ability to determine whether Defendant properly calculated gross revenue, applied exchange rates, or deducted fuel and insurance costs. Plaintiff's inability to access this information continued throughout the contractual relationship, despite repeated requests, affirmatively preventing discovery of Defendant's misconduct.

**F. Percentage-Based Compensation and Exclusive Control**

[45] At all material times, Plaintiff's compensation was calculated as a fixed percentage of the gross revenue earned on each load hauled for Defendant JDW. Defendant JDW had exclusive control over all information necessary to determine gross revenue, including customer invoices, freight rates, currency denomination of payments, exchange rates applied, fuel surcharges, accessorial charges, and settlement calculations. Plaintiff had no independent access to this information and could not verify his compensation without Defendant JDW's disclosure, as required under 49 C.F.R. § 376.12(g).

**G. Necessity of Settlement Disclosure**

13

[46]   Because Plaintiff's compensation depended entirely on Defendant JDW's calculation of gross revenue, access to complete and accurate settlement documentation was essential to the performance of the lease agreement. Without disclosure of customer invoices, currency denomination, and exchange rates applied, Plaintiff had no practical ability to determine whether he was paid the agreed percentage of gross revenue. Defendant JDW's refusal to provide these records deprived Plaintiff of the ability to verify compensation, calculate deductions, or audit exchange rates, which is the precise harm that 49 C.F.R. § 376.12(g) is intended to prevent.

**H. Refusal to Disclose**

[47]   Despite repeated requests, Defendant JDW refused to provide Plaintiff with complete settlement documentation, including customer freight bills, currency information, and exchange-rate data, and instead retained exclusive control over such records. JDW's refusal was not based on administrative burden or confidentiality concerns, but was intended to prevent Plaintiff from verifying the accuracy of his compensation. JDW continues to retain exclusive control over Plaintiff's settlement and freight records and has not produced them to date.

**I. Harm Suffered by Plaintiff**

[48]   As a direct and proximate result of Defendant JDW's unlawful conduct described above, Plaintiff has suffered substantial monetary damages, presently estimated to exceed USD $100,000, the precise amount to be determined through discovery.

[49]   Plaintiff's damages include, but are not limited to:

(a) Underpayment of percentage-based compensation owed under the lease agreement and required by 49 C.F.R. Part 376;
(b) Underpayment resulting from concealed U.S.-dollar customer revenues earned on U.S.-performed transportation;

(c) Underpayment caused by the application of undisclosed, improper, or unconsented-to exchange rates, differing from those represented to Plaintiff;

(d) Failure to properly disclose and remit fuel surcharges attributable to Plaintiff's hauled loads;

(e) Overcharges and improper deductions, including but not limited to fuel costs, tolls, truck insurance premiums, and health-benefit premiums, the full extent of which remains unknown due to Defendant JDW's refusal to produce records;

(f) Loss of income, time, and business opportunities, including operational inefficiencies caused by Defendant JDW's conduct; and

(g) Damages resulting from Defendant JDW's fraudulent and negligent misrepresentations and concealment, including reliance damages and lost compensation.

[50] Defendant JDW's failure to provide FMCSA-mandated settlement documentation has prevented Plaintiff from calculating his damages with precision, thereby necessitating discovery to determine the full scope of underpayments and improper deductions.

## VII. CLAIMS FOR RELIEF

**Independent Duties and Non-Preemption**

[51] Plaintiff asserts federal statutory claims and common-law claims based on independent duties. The TILR establish minimum disclosure requirements. Plaintiff's concealment and contract claims arise from Defendant's affirmative misrepresentations, concealment of material facts, and contractual undertakings, not merely from regulatory noncompliance. These claims are pled in the alternative.

## COUNT I – VIOLATIONS OF FMCSA TRUTH-IN-LEASING REGULATIONS

(49 C.F.R. § 376.12(d), (f), (g), (i); 49 U.S.C. § 14704(a)(2))

[52] Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

15

[53] Defendant violated 49 C.F.R. § 376.12(d) by failing to clearly and truthfully disclose, including but not limited to:

(a) the currency in which customer payments were made (CAD vs. USD);

(b) the method and rate of currency conversion applied to USD payments;

(c) fuel surcharges and other deductions; and

(d) insurance premiums or other expenses deducted from gross revenue.

[54] Defendant violated 49 C.F.R. § 376.12(g) by refusing to permit Plaintiff to inspect, copy, or meaningfully review freight bills, rate confirmations, and customer invoices, despite repeated requests, and by restricting access through artificial conditions, including weekday-only access, limited hours, and mandatory attendance by Defendant's designated personnel.

[55] Defendant violated 49 C.F.R. § 376.12(i) by making false or misleading statements regarding compensation, USD payment volume, exchange rates applied, and gross revenue for approximately 1,600 loads hauled by Plaintiff.

[56] Defendant further violated 49 C.F.R. § 376.12(f) by failing to provide clear and complete statements explaining how Plaintiff's percentage-based compensation was calculated. While the pay statements indicated that Plaintiff was paid seventy-five percent (75%) of gross revenue, Defendant did not disclose:

(a) the total gross revenue for each load;

(b) the currency in which customer payments were made (CAD or USD);

(c) the exchange rate applied to U.S.-dollar payments;

(d) all deductions, including insurance premiums, health benefits, DEF costs, fuel surcharges, tolls, and accessorial charges; and

16

(e) the method used to calculate such deductions and net compensation.

As a result, Plaintiff was unable to verify the accuracy of his compensation or determine whether he was properly paid under the lease agreement.

[57] These violations were continuous and ongoing and were actively concealed through affirmative misrepresentations, restricted access to records, and selective production of documents.

[58] As a direct result, Plaintiff suffered financial harm, including systematic underpayment of compensation and inability to independently verify earnings. These violations give rise to a private right of action under 49 U.S.C. § 14704(a)(2).

[59a] Any applicable statute of limitations is equitably tolled due to Defendant's deliberate concealment of the facts giving rise to Plaintiff's claims.

## COUNT II – FRAUD / FRAUDULENT MISREPRESENTATION AND CONCEALMENT

[59]  Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

### Misrepresentations by Defendant

[60]  Between March 4, 2019 and January 16, 2024, Defendant JDW INTERNATIONAL INC., acting through its officers, agents, and authorized representatives, knowingly and intentionally made the following materially false representations to Plaintiff:

1. That nearly all customer payments were made in Canadian dollars (CAD);
2. That any U.S.-dollar (USD) payments were rare and immaterial;
3. That any USD payments would be converted to CAD using the Royal Bank of Canada (RBC) posted exchange rate on the settlement date;

17

4. That the flat $75 local pickup/delivery fee was always charged in CAD; and

5. That Plaintiff had no need to review freight bills, rate confirmations, or customer invoices because settlements were accurate and fully transparent.

[61] Defendant knew these representations were false, or made them with reckless disregard for the truth, and intended to induce Plaintiff's reliance while concealing systematic underpayment of Plaintiff's percentage-based compensation.

## Plaintiff's Reliance

[62] Plaintiff reasonably relied on these representations in accepting and performing freight loads, calculating expected compensation, and continuing to operate under Defendant's USDOT and MC authority. The representations concerned matters uniquely within Defendant's knowledge, including customer payments, settlement practices, and currency conversions.

[63] As a direct result of these misrepresentations, Plaintiff continued to haul freight under Defendant's authority, refrained from fully inspecting settlement documentation, and had no practical means of verifying the accuracy of his compensation.

## Intent to Conceal

[64] Defendant made these representations with the intent to:

a. Cause Plaintiff to continue hauling freight under Defendant's USDOT and MC authority;

b. Prevent Plaintiff from requesting freight bills, rate confirmations, and settlement documentation; and

c. Conceal systematic underpayment and improper deductions from Plaintiff's percentage-based compensation, as described in Count I.

## Damages

18

[65]   Plaintiff suffered damages as a direct and proximate result of Defendant's fraudulent conduct, including underpayment of compensation, loss of income, operational inefficiencies, and deprivation of lawful contractual rights.

## Fraudulent Concealment / Tolling of Statute of Limitations

[66]   Defendant's fraudulent concealment of material facts, including the existence of USD-paid customer revenues and undisclosed exchange rates, tolled all applicable statutes of limitation until January 16, 2024, when Plaintiff first obtained concrete evidence of such practices.

[67]   Plaintiff is entitled to recover all compensatory damages, consequential damages, and any other relief allowed by law as a result of Defendant's fraudulent and deceptive practices.

## COUNT III – BREACH OF CONTRACT

[68]   Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

## Breach of Payment Obligations

[69]   Under the written owner-operator lease agreement, Defendant JDW INTERNATIONAL INC. was required to pay Plaintiff seventy-five percent (75%) of the gross revenue generated by each load completed, or the applicable portion thereof, where "gross revenue" consisted of the total freight charges billed to and paid by the customer, prior to undisclosed or unauthorized deductions, and without unilateral alteration of currency or exchange rates.

[70]   Defendant breached the agreement by, among other things:

a. Concealing portions of gross freight revenue, including revenue paid by customers in U.S. dollars (USD);

b. Unilaterally converting USD revenues into Canadian dollars (CAD) using undisclosed and non-contractual exchange rates;

c. Deducting fuel costs, fuel surcharges, insurance premiums, and other charges without disclosure or contractual authorization; and

d. Refusing to provide freight bills, settlement statements, and other documentation necessary for Plaintiff to verify gross revenue and compensation, despite repeated requests.

**Damages**

[71]    As a direct and proximate result of Defendant's breaches, Plaintiff suffered monetary damages, including underpayment of contractual compensation and loss of income.

**Timeliness / Tolling**

[72] Plaintiff's breach of contract claim is timely under the applicable statute of limitations governing written contracts. In the alternative, any limitation period is tolled by Defendant's fraudulent concealment of material compensation information, including gross revenue and the currency of customer freight payments. Defendant's refusal to disclose settlement documentation prevented Plaintiff from discovering the full extent of the contractual breaches until January 16, 2024.

**Frustration of Percentage Term**

[73]    Defendant's refusal to disclose settlement and revenue documentation deprived Plaintiff of the benefit of his bargain under the contract. By withholding information necessary to verify gross revenue, Defendant rendered the percentage-based compensation term meaningless and impossible for Plaintiff to enforce.

[74]    Defendant further breached the contract by converting USD-paid freight revenue to CAD at undisclosed and below-market exchange rates. This manipulation reduced the gross revenue

base upon which Plaintiff's percentage-based compensation was calculated, effectively retaining funds contractually owed to Plaintiff and diverting them to cover Defendant's operational costs.

[75]   Under the agreement, Defendant was responsible for paying tolls, bridge crossings, lumpers, and all licensing fees, except for insurance. By applying artificially low exchange rates, Defendant caused Plaintiff to bear these costs, as the difference in currency conversion was sufficient to cover such expenses. Defendant was unjustly enriched by retaining funds that contractually belonged to Plaintiff and avoiding its obligations under the agreement.

[76]   Plaintiff is entitled to recover all compensatory damages, consequential damages, and any other relief allowed by law as a result of Defendant's breaches of contract.

## COUNT IV -   BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### Implied Covenant

[77]   Every contract includes an implied covenant of good faith and fair dealing, which prohibits a party from exercising contractual discretion in a manner that deprives the other party of the benefits and fruits of the contract.

### Bad-Faith Non-Disclosure

[78] Defendant JDW INTERNATIONAL INC. breached the implied covenant by deliberately withholding settlement documentation, customer invoices, and currency/exchange-rate information, exercising exclusive control over revenue data to conceal underpayments, and thereby depriving Plaintiff of the benefit of his percentage-based compensation agreement. This conduct constituted more than a mere breach and reflected deliberate bad faith.

[79]     As a direct and proximate result of Defendant's conduct, Plaintiff suffered monetary damages, including underpayment of compensation, lost income, and deprivation of contractual rights, and is entitled to all relief available under law and equity.

## COUNT V – DECLARATORY AND INJUNCTIVE RELIEF

[80]     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

[81]   An actual and justiciable controversy exists between the parties concerning their respective rights and obligations under the FMCSA Truth-in-Leasing Regulations ("TILR"), 49 C.F.R. Part 376, and the written lease agreement governing Plaintiff's services as an owner-operator.

[82]     Plaintiff seeks a declaration pursuant to 28 U.S.C. §§ 2201–2202 that Defendant JDW INTERNATIONAL INC.'s compensation, settlement, and disclosure practices violate 49 C.F.R. §§ 376.12(d), (g), and (i), and that Plaintiff is entitled to full access to all freight bills, rate confirmations, customer invoices, currency records, exchange-rate calculations, fuel surcharge disclosures, and other settlement documentation required by federal law.

[83]     Plaintiff further seeks preliminary and permanent injunctive relief:

(a) prohibiting Defendant from continuing deceptive or non-compliant settlement practices; and
(b) requiring Defendant to produce all documentation mandated by 49 C.F.R. § 376.12(g) for all loads hauled by Plaintiff.

[84] Injunctive relief is necessary because Plaintiff lacks an adequate remedy at law, because absent court intervention Defendant is likely to continue violating federal law, and because Defendant's continued exclusive control over the records creates a substantial risk of spoliation.

Monetary damages alone cannot remedy Defendant's continued refusal to disclose records necessary to calculate Plaintiff's compensation.

## COUNT VI – SUCCESSOR LIABILITY (CONTINUITY OF ENTERPRISE)

[85]   Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

[86] The predecessor corporate entity, 2051782 Ontario Ltd., doing business as JDW International, operated as a motor carrier engaged in U.S. interstate commerce under U.S. Department of Transportation ("USDOT") and Motor Carrier ("MC") operating authority, and held itself out to Plaintiff and the public as such.

[87] After Plaintiff repeatedly demanded production of federally mandated freight-bill and settlement documentation pursuant to 49 C.F.R. §§ 376.12(d), (g), and (i), and objected to Defendant's misrepresentations concerning currency conversion and compensation, Defendant undertook a corporate restructuring.

[88]   That restructuring included the amalgamation of the predecessor entity and the creation of an amalgamated successor corporation, using substantially the same trade name, assets, operations, personnel, dispatch systems, customers, equipment, accounting practices, and USDOT/MC operating authority.

[89]   Under the Ontario Business Corporations Act, R.S.O. 1990, c. B.16, s. 179(1)(b), when corporations amalgamate, "the amalgamated corporation shall be subject to all the liabilities, contracts, disabilities and debts of each of the amalgamating corporations."

23

[90]  Accordingly, as a matter of statutory successor liability under Ontario law, which applies irrespective of the jurisdiction in which the predecessor's liabilities arose, Defendant JDW INTERNATIONAL INC. (Ontario Corporation No. 1001407417), effective November 6, 2025, is legally responsible for all liabilities of its predecessor entities, including liabilities arising from violations of U.S. federal transportation law committed during interstate operations.

[91] In addition, under U.S. federal common law, successor liability applies where a successor entity is a mere continuation of the predecessor or where a transaction is structured to avoid existing or anticipated liabilities.

[92]  Federal courts recognize the "continuity of enterprise" doctrine in determining successor liability.

[93]  JDW INTERNATIONAL INC. constitutes a continuation of its predecessor because it:

(a) employs the same owners, officers, and decision-makers;

(b) uses the same USDOT and MC operating authority;

(c) conducts the same trucking and logistics operations;

(d) utilizes the same equipment, dispatch systems, personnel, and accounting staff;

(e) services the same customers;

(f) operates under the same or substantially identical trade name;

(g) maintains the same commercial presence and interstate routes; and

(h) continues to compensate owner-operators under the same percentage-based compensation model.

**Business Name Continuity and Timing**

[94]  Public records of the Ontario Ministry of Public and Business Service Delivery confirm that Defendant JDW INTERNATIONAL INC. maintains an active registered business name "JDW INTERNATIONAL" (Business Identification Number 1001092864), registered on December 17,

2024 and expiring December 16, 2029. The same business name "JDW INTERNATIONAL" was previously registered and used by 2051782 Ontario Ltd., which ceased to exist by amalgamation effective November 6, 2025. The predecessor business-name registration expired shortly thereafter.

[95] The registration and continued use of the identical business name, together with the amalgamation of the predecessor corporation, the continuity of operations, personnel, customers, accounting practices, and USDOT/MC operating authority, demonstrates that JDW INTERNATIONAL INC. is a continuation of the same enterprise. The timing of the business-name registration shortly after Plaintiff placed Defendant on notice of statutory violations further supports the inference that the restructuring was undertaken with knowledge of Plaintiff's claims and to avoid existing or anticipated liabilities.

[96] The continuity of enterprise demonstrates that JDW INTERNATIONAL INC. is not a new or independent business, but a direct continuation of the predecessor corporation, reorganized through amalgamation.

[97] The restructuring was undertaken with knowledge of Plaintiff's claims and objections and had the effect of frustrating enforcement of statutory and contractual obligations, thereby supporting the imposition of successor liability.

[98] Plaintiff seeks a declaration that JDW INTERNATIONAL INC. (Ontario Corporation No. 1001407417) is the lawful successor to 2051782 Ontario Ltd. d/b/a JDW International and is liable for all statutory, regulatory, contractual, and equitable obligations arising from its predecessor's conduct, including violations of 49 C.F.R. Part 376 and 49 U.S.C. § 14704(a)(2).

## COUNT VII – EQUITABLE ACCOUNTING

**Necessity of Accounting**

[99] Defendant exercised exclusive control over all records necessary to determine Plaintiff's compensation, including customer invoices, freight bills, currency denomination of payments, exchange rates applied, fuel surcharges, and settlement calculations, and has refused to disclose such records despite repeated requests and statutory obligations under 49 C.F.R. § 376.12(g).

[100] As a result of Defendant's exclusive control and non-disclosure, Plaintiff cannot determine the full extent of underpayment and improper deductions through ordinary means. An equitable accounting is therefore necessary to ascertain the true gross revenue for each load, the currency in which customers paid, the exchange rates applied, and the compensation and deductions allocated to Plaintiff.

[101] An accounting is particularly appropriate where, as here, the relevant financial information is complex, involves approximately 1,600 transactions over multiple years, includes multi-currency settlements, and remains exclusively within Defendant's possession and control.

[102] Without an accounting ordered by the Court, Plaintiff lacks an adequate remedy at law because Defendant's refusal to produce required records prevents Plaintiff from calculating damages with reasonable certainty. An accounting is an independent equitable claim where a defendant exercises exclusive control over financial information necessary to determine amounts owed.

## COUNT VIII – NEGLIGENT MISREPRESENTATION

[103]  Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

[104] In the course of its business as a federally regulated motor carrier, Defendant JDW INTERNATIONAL INC., acting through its officers, directors, employees, and agents, supplied information to Plaintiff concerning compensation, customer payment currency, and exchange-rate practices for the guidance of Plaintiff in operating as a percentage-based owner-operator.

[105] Defendant represented that customer payments were primarily in Canadian CAD and that any USD payments were converted using bank exchange rates, while omitting material facts concerning the volume of USD-paid freight and the application of below-market or non-bank exchange rates.

[106] Defendant failed to exercise reasonable care or competence in communicating this information, or communicated information without regard to its truth or completeness, despite knowing that Plaintiff reasonably relied on such information in accepting loads and continuing to operate under Defendant's USDOT and MC authority.

[107]  Plaintiff justifiably relied on Defendant's negligent misrepresentations and omissions and suffered economic loss as a direct and proximate result, including underpayment of compensation and improper deductions.

[108]  This claim is pleaded in the alternative to Plaintiff's fraud claim, to the extent the Court finds Defendant's misrepresentations were negligent rather than intentional.

## IX. JURY DEMAND

[109]   Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## X. PRAYER FOR RELIEF

[110]   WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant the following relief:

### A. Declaratory Relief

a. A declaration that Defendant violated the FMCSA Truth-in-Leasing Regulations, including 49 C.F.R. §§ 376.12(d), (f), (g), and (i);

b. A declaration of the parties' respective rights and obligations under 49 C.F.R. Part 376.

### B. Injunctive Relief

a. A permanent injunction requiring Defendant to produce all freight bills, invoices, bills of lading, rate confirmations, settlement records, fuel surcharge disclosures, currency-conversion records, and all other documents necessary for Plaintiff to verify his compensation;

b. An injunction prohibiting Defendant from destroying, concealing, altering, or transferring any records relevant to Plaintiff's claims.

### C. Compensatory Damages

a. An award of compensatory damages in an amount to be determined at trial, presently estimated to be approximately **USD $100,000**, based on Defendant's refusal to produce required records, including but not limited to:

i.  unpaid percentage-based compensation;
ii. amounts wrongfully withheld;

iii. losses caused by undisclosed or improper currency conversions;

iv. losses caused by fraudulent misrepresentations and concealment;

v.  underpayment of fuel surcharges and accessorial charges;

vi. calculations of truck and health benefits insurance premiums;

vii. calculations of all other deductions;

b. An order requiring a full accounting and audit of all loads hauled by Plaintiff under Defendant's authority.

### D. Statutory Relief Under 49 U.S.C. § 14704(a)(2)

a. All damages and equitable relief available under the federal private right of action for violations of motor-carrier statutes and regulations, including 49 C.F.R. Part 376.

### E. Equitable Relief

Appropriate equitable relief, including but not limited to:

a. disgorgement of unjust enrichment;

b. imposition of a constructive trust over wrongfully retained funds;

c. reformation of the lease agreement to conform to FMCSA Truth-in-Leasing requirements.

### F. Successor Liability

a. Plaintiff requests a declaration that JDW INTERNATIONAL INC. (Ontario Corporation No. 1001407417) is the lawful successor to 2051782 Ontario Ltd., and is liable for all statutory, contractual, and equitable obligations of its predecessor arising from U.S. interstate motor-carrier operations, including violations of 49 C.F.R. Part 376 and 49 U.S.C. § 14704(a)(2).

### G. Interest, Costs, and Further Relief

a. An award of pre- and post-judgment interest as permitted by law;

b. An award of costs and any fees authorized under federal law;

c. Such other and further relief as the Court deems just and proper.

Respectfully submitted,


Date:  January 6, 2026

Marek Petrykowski
Plaintiff *pro se*
41 Kings Heights Dr. SE
Airdrie, AB T4A 0E6
petrykowski.marek@gmail.com
226-235-8773

JS 44 (Rev. 08/18)

# CIVIL COVE

Case 2:26-cv-10040
Judge: Michelson, Laurie J.
MJ: Ivy, Curtis
Filed: 01-06-2026 At 04:39 PM
CMP PETRYKOWSKI V. JDW INTERNATIONA      as
L INC

The JS 44 civil cover sheet and the information contained herein neither replace nor supple
provided by local rules of court. This form, approved by the Judicial Conference of the Ur
purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS F*

## I. (a) PLAINTIFFS
MAREK PETRYKOWSKI

**DEFENDANTS**
JDW INTERNATIONAL INC. (Ontario Corporation No. 1001407417)

**(b)** County of Residence of First Listed Plaintiff   **FOREIGN**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   **FOREIGN**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question
  *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
49 U.S.C. § 14704(a)(2)
Brief description of cause:
Violations of FMCSA Truth-in-Leasing Regulations; Fraud; Breach of Contract; Declaratory and Injunctive Relief

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    **DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____