# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

**MAREK PETRYKOWSKI**

Plaintiff

v.

**JDW INTERNATIONAL INC.**
(Ontario Corporation No. 1001407417), successor by amalgamation to 2051782 Ontario Ltd.

Defendant

Case No. 2:26-cv-10040
Hon. Laurie J. Michelson

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(2)

## PRELIMINARY STATEMENT

Defendant JDW International, Inc. ("JDW") moves to dismiss Plaintiff's

Complaint pursuant to Rules 12(b)(1) and 12(b)(2) of the *Federal Rules of Civil*

*Procedure* (*FRCP*) on the grounds that this Court allegedly lacks subject-matter jurisdiction and personal jurisdiction.

JDW's Motion rests largely on a mischaracterization of Plaintiff's Complaint and a conflation of distinct jurisdictional doctrines. Plaintiff does not invoke diversity or alienage jurisdiction under 28 U.S.C. § 1332. Rather, Plaintiff expressly invokes federal-question jurisdiction under 28 U.S.C. § 1331 based on claims arising directly under 49 U.S.C. § 14704(a)(2) and the Federal Motor Carrier Safety Administration ("FMCSA") Truth-in-Leasing Regulations, 49 C.F.R. Part 376.

Instead of addressing the federal statutory causes of action actually pleaded, Defendant devotes substantial portions of its Motion to diversity and alienage principles applicable only to actions brought under § 1332. Defendant further attempts to characterize Plaintiff's federally regulated interstate transportation claims as a purely Canadian contractual dispute while failing to address Plaintiff's allegations that the parties' relationship arose from repeated interstate freight transportation conducted through Michigan under Defendant's USDOT and MC operating authority.

Defendant's Motion also improperly conflates a Rule 12(b)(1) jurisdictional inquiry with merits-based arguments concerning the existence and scope of Plaintiff's federal causes of action. At this stage, Plaintiff need only establish a prima

2

facie basis for jurisdiction, and the Court must accept Plaintiff's well-pleaded factual allegations as true and construe all reasonable inferences in Plaintiff's favor.

Because Plaintiff asserts claims arising directly under federal law, and because Defendant purposefully engaged in repeated Michigan-directed interstate transportation activities giving rise to those claims, Defendant's Motion should be denied in its entirety.

Defendant's briefing repeatedly conflates three distinct doctrines:

(a) diversity jurisdiction under 28 U.S.C. § 1332;

(b) federal-question jurisdiction under 28 U.S.C. § 1331; and

(c) specific personal jurisdiction under *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021) and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES, RULES AND REGULATIONS ........................... 6-8
BRIEF IN SUPPORT OF JDW INTERNATIONAL, INC.'S MOTION
PURSUANT TO FRCP 12 (B)(1) AND (2)................................................9
I. INTRODUCTION .................................................................................9
II. RELEVANT FACTUAL BACKGROUND ........................................11
III. LEGAL STANDARDS ......................................................................12
    A. Rule 12(b)(1) ................................................................................12
    B. Rule 12(b)(2) ...............................................................................13
IV. ARGUMENT.....................................................................................14
    A. Defendant Mischaracterizes the Complaint by Arguing Diversity
    Jurisdiction That Plaintiff Does Not Invoke .....................................14
    B. This Court Has Federal-Question Subject-Matter Jurisdiction Under 28
    U.S.C. § 1331 ......................................................................................17
        1. Plaintiff's Claims Arise Directly Under Federal Law ...........17
        2. Section 14704(a)(2) Provides a Private Right of Action .......18
        3. Defendant's *Grable/Mikulski* Authorities Are Inapplicable ..................22
    C. This Court Has Specific Personal Jurisdiction Over Defendant ..................23
        1. Defendant Purposefully Availed Itself of the Privileges and Protections
        of U.S. Interstate Commerce .......................................................23
        2. Plaintiff's Claims Arise Out of or Relate to Defendant's Michigan-
        Directed Conduct..........................................................................25
        3. Exercising Jurisdiction Comports with Traditional Notions of Fair Play
        and Substantial Justice.................................................................28
        4. Defendant's Reliance on Daimler and BNSF Is Misplaced....................30
        5. Walden Supports Jurisdiction Because the Relevant Contacts Are
        Defendant's Own Michigan-Directed Activities .........................31
        6. The Court Must Evaluate Defendant's Michigan Contacts Based on
        Practical Commercial Realities ...................................................34
    D. Defendant's Cited Authorities Ultimately Undermine Rather Than Support
    Dismissal .............................................................................................35
        1. Defendant's Reliance on *Ford Motor Co. v. Montana Eighth Judicial
        District Court*, 592 U.S. 351 (2021) Supports Jurisdiction ........35
        2. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) Confirms that
        Continuing Interstate Relationships Support Jurisdiction..........36
        3. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996), Supports
        Purposeful, Ongoing Commercial Contact ................................36
        4. Defendant's Rule 12(b)(2) Authorities Support a *prima facie* Standard
        Favorable to Plaintiff...................................................................37

5. Defendant's General Jurisdiction Authorities are Inapplicable ..............37
6. Defendant's Federal-Question Authorities are Distinguishable ............38

V. CONCLUSION.............................................................................................38

# TABLE OF AUTHORITIES, STATUTES AND REGULATIONS

## Cases

*American Well Works Co. v. Layne & Bowler Co.,*
241 U.S. 257 (1916)..............................................................................................15, 16

*BNSF Ry. Co. v. Tyrrell,*
137 S. Ct. 1549 (2017).........................................................................................29, 36

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985).....................................................................................5, 24, 29, 34

*Caron v. NCL (Bah.), Ltd.,*
910 F.3d 1359 (11th Cir. 2018) ..................................................................................15

*Caterpillar Inc. v. Williams,*
482 U.S. 386 (1987).............................................................................................10, 15

*CompuServe, Inc. v. Patterson,*
89 F.3d 1257 (6th Cir. 1996) ......................................................................................35

*Daimler AG v. Bauman,*
571 U.S. 117 (2014)..........................................................................................9, 29, 36

*Fetinci v. Rayco Logistics, LLC,*
No. 23-11720 (E.D. Mich. 2024).........................................................................19, 20

*Ford Motor Co. v. Montana Eighth Judicial District Court,*
592 U.S. 351 (2021)...................................................................2, 10, 26, 29, 32, 34

*Fox v. TransAm Leasing, Inc.,*
839 F.3d 1209 (10th Cir. 2016) ..................................................................................17

*Gentek Building Products, Inc. v. Sherwin-Williams Co.,*
491 F.3d 320 (6th Cir. 2007) ......................................................................................12

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,*
545 U.S. 308 (2005)............................................................................................4, 6, 22

*In re Arctic Express Inc. (OOIDA v. Comerica Bank),*
636 F.3d 781 (6th Cir. 2011) ......................................................................................18

*International Shoe Co. v. Washington,*
326 U.S. 310 (1945)....................................................................................................29

*Louisville & Nashville Railroad Co. v. Mottley,*
211 U.S. 149 (1908)..................................................................................................17

*Mikulski v. Centerior Energy Corp.,*
501 F.3d 555 (6th Cir. 2007) ....................................................................................22

*Mims v. Arrow Financial Services, LLC,*
565 U.S. 368 (2012)..............................................................................................9, 16

*Mortensen v. First Federal Savings & Loan Ass'n,*
549 F.2d 884 (3d Cir. 1977)......................................................................................12

*Ohio ex rel. Skaggs v. Brunner,*
629 F.3d 527 (6th Cir. 2010) ..............................................................................22, 36

*Osborn v. Bank of the United States,*
22 U.S. (9 Wheat.) 738 (1824)............................................................................16, 17

*Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.,*
250 F. Supp. 2d 1151 (W.D. Mo. 2001) ..............................................................18, 21

*Pelletier v. Landstar System, Inc.,*
541 F.3d 1278 (11th Cir. 2008) ................................................................................18

*Rowell v. Franconia Minerals Corp.,*
706 F. Supp. 2d 891 (D. Minn. 2010).......................................................................16

*Serras v. First Tennessee Bank Nat'l Ass'n,*
875 F.2d 1212 (6th Cir. 1989) ............................................................................32, 36

*Simon Holdings PLC v. Klenz,*
878 F. Supp. 210 (S.D.N.Y. 1995) ............................................................................16

*Southern Machine Co. v. Mohasco Industries, Inc.,*
401 F.2d 374 (6th Cir. 1968) ........................................................................14, 26, 33

*Theunissen v. Matthews,*
935 F.2d 1454 (6th Cir. 1991) ......................................................................16, 32, 36

*Thompson v. Deloitte & Touche LLP,*
503 F. Supp. 2d 1118 (N.D. Ill. 2007)......................................................................16

*Universal Licensing Corp. v. Paola del Lungo S.p.A.,*
293 F.3d 579 (2d Cir. 2002)......................................................................................15

*Verlinden B.V. v. Central Bank of Nigeria,*
461 U.S. 480 (1983).................................................................................................17

*Walden v. Fiore,*
571 U.S. 277 (2014).................................................................................................30

## Statutes

28 U.S.C. § 1331 .............................................................................2, 7, 11, 13, 34
28 U.S.C. § 1332.............................................................................2. 3, 7, 13, 35
28 U.S.C. § 1367(a) .......................................................................................15
49 U.S.C. § 14704(a)(2)............................. 2, 7, 8, 13, 14, 15, 17, 18, 19, 20, 25, 35
49 U.S.C. ch.135 ............................................................................................17

## Regulations

49 C.F.R. § 376.12(g) ......................................................................................8

## Rules

Fed. R. Civ. P. 12(b)(1)............................................................ 1, 2, 4, 6, 7, 11, 19, 37
Fed. R. Civ. P. 12(b)(2)................................................. 1, 3, 4, 5, 6, 30, 33, 34, 36, 37

**BRIEF IN OPPOSITION TO JDW INTERNATIONAL, INC.'S
MOTION PURSUANT TO FRCP 12 (B)(1) AND (2)**

## I. INTRODUCTION

This Motion to Dismiss rests on a mischaracterization of Plaintiff's Complaint and a misapplication of federal jurisdictional doctrine.

Although Plaintiff expressly invokes federal-question jurisdiction under 28 U.S.C. § 1331 based on claims arising under 49 U.S.C. § 14704(a)(2) and the Federal Motor Carrier Safety Administration ("FMCSA") Truth-in-Leasing Regulations, 49 C.F.R. Part 376, Defendant devotes substantial portions of its Rule 12(b)(1) motion to diversity and alienage principles under 28 U.S.C. § 1332. Defendant, therefore, attacks a jurisdictional theory Plaintiff never pleaded while largely disregarding the federal statutory causes of action actually asserted in the Complaint.

Defendant further conflates subject-matter jurisdiction with merits-based arguments concerning the existence and scope of Plaintiff's federal causes of action. At this stage, however, Plaintiff need only plead a *prima facie* basis for jurisdiction, and the Court must accept Plaintiff's well-pleaded factual allegations as true and construe all reasonable inferences in Plaintiff's favor.

The Motion, likewise, misapplies general jurisdiction principles under *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and *BNSF Railway Co. v. Tyrrell*, 581 U.S.

9

402 (2017), while largely ignoring the controlling framework governing specific jurisdiction under *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021). Plaintiff's claims arise from Defendant's interstate motor carrier operations conducted under federal USDOT and MC authority, including recurring cross-border freight transportation involving Michigan as part of Defendant's operational routing structure.

Federal-question jurisdiction exists where federal law creates the cause of action or supplies the rule of decision. Plaintiff's claims arise directly under federal law, including 49 U.S.C. § 14704(a)(2) and 49 C.F.R. Part 376, which govern the federally regulated leasing relationship and compensation practices at issue here. See *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012).

Defendant's characterization of this case as a "purely foreign dispute between Canadian parties" disregards the well-pleaded federal claims asserted in the Complaint and the governing jurisdictional analysis under § 1331, which turns on the source of the cause of action rather than the citizenship of the parties. See *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987).

Because Plaintiff asserts claims arising directly under federal law and because those claims arise from Defendant's repeated Michigan-directed interstate transportation activities, Defendant's Motion should be denied in its entirety.

10

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff was an owner-operator who, pursuant to a written Owner-Operator Agreement dated March 4, 2019, performed interstate freight transportation under Defendant's USDOT and MC operating authority. Plaintiff's compensation was calculated as a percentage of freight "gross" revenue derived from interstate commercial transportation within the United States.

During the course of performance, Defendant:

(a) dispatched Plaintiff into and through the United States pursuant to federally authorized motor carrier operations;

(b) routinely routed freight shipments through Michigan, including recurring border crossings through Port Huron, as reflected in operational records;

(c) calculated Plaintiff's compensation based on freight revenue generated through U.S. interstate commerce;

(d) imposed deductions for fuel, insurance, and operational charges; and

(e) failed to provide complete and timely settlement documentation required under 49 C.F.R. § 376.12(g), as evidenced by discrepancies and omissions in the settlement and payment records produced by Plaintiff.

11

The foregoing conduct is reflected in the representative settlement documentation, pay statements, and related records produced by Plaintiff (Exhibit E).

Plaintiff's documentary evidence, including load customs manifests, ACE/ACI records, and routing summaries (Exhibits B, C, D, G, and H), demonstrates a consistent and recurring pattern of interstate freight transportation between Canada and the United States. These records further show repeated routing through Port Huron, Michigan, as part of Defendant's regular cross-border logistics operations.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

On a motion under Rule 12(b)(1), the Court determines whether it has subject-matter jurisdiction over the claims asserted. A Rule 12(b)(1) motion may present either a facial or factual attack on jurisdiction.

Where a defendant mounts a facial attack, the Court must accept the allegations in the complaint as true and determine whether they establish jurisdiction. See *Gentek Building Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320 (6th Cir. 2007) (*Gentek*); *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Federal-question jurisdiction under 28 U.S.C. § 1331 is governed by the well-pleaded complaint rule, which requires that the federal question appear on the face of the plaintiff's properly pleaded complaint and cannot be defeated by a defendant's characterization of the claims. See *Caterpillar*, *supra*.

Jurisdiction is determined from the plaintiff's properly pleaded claims, not from defenses or alternative characterizations advanced by the defendant.

### B. Rule 12(b)(2)

A motion to dismiss under Rule 12(b)(2) tests whether the Court may exercise personal jurisdiction over Defendant. Plaintiff bears the burden of establishing jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991).

Where the Court decides the motion without an evidentiary hearing, Plaintiff need only make a prima facie showing of jurisdiction. The pleadings and affidavits must be construed in the light most favorable to Plaintiff, and all factual disputes must be resolved in Plaintiff's favor. The Court must not weigh Defendant's controverting evidence against Plaintiff's prima facie showing. *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212 (6th Cir. 1989).

The Sixth Circuit applies a three-part test for specific personal jurisdiction under due process. See *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968):

> (1) Defendant must purposefully avail itself of the privilege of acting in the forum or causing consequences there;
>
> (2) Plaintiff's claims must arise out of or relate to Defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must be reasonable under traditional notions of fair play and substantial justice.

In applying this test, the Sixth Circuit has emphasized that jurisdiction is not defeated by formalistic distinctions but instead turns on whether the defendant's conduct created substantial, continuing, and foreseeable contacts with the forum such that it should reasonably anticipate being haled into court there. See *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968).

## IV. ARGUMENT

### A. Defendant Mischaracterizes the Complaint by Arguing Diversity Jurisdiction That Plaintiff Does Not Invoke

14

Rather than addressing the federal statutory causes of action actually asserted, Defendant devotes substantial portions of its motion to diversity and alienage principles under 28 U.S.C. § 1332. That argument is legally irrelevant, as Plaintiff does not assert jurisdiction under § 1332 and expressly disclaims diversity jurisdiction (para. 4, Complaint). Defendant's arguments concerning diversity and alienage jurisdiction under 28 U.S.C. § 1332 are, therefore, inapposite.

Plaintiff invokes:

- 28 U.S.C. § 1331 (federal-question jurisdiction)

- 49 U.S.C. § 14704(a)(2) (private federal right of action)

- 49 C.F.R. Part 376 (FMCSA Truth-in-Leasing Regulations)

Jurisdiction is determined by the complaint actually pleaded, not the jurisdiction Defendant prefers to litigate. See *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987).

Plaintiff's Complaint asserts federal-question jurisdiction under 28 U.S.C. § 1331 based on violations of the Federal Motor Carrier Safety Administration ("FMCSA") Truth-in-Leasing Regulations and the private right of action provided under 49 U.S.C. § 14704(a)(2).

Diversity jurisdiction under § 1332 and federal-question jurisdiction under § 1331 are distinct statutory grants governed by different jurisdictional requirements.

15

The former turns on the citizenship of the parties; the latter turns on the source of the plaintiff's claim. See *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987).

Accordingly, Defendant's reliance on alienage and diversity cases, including *Caron v. NCL (Bah.), Ltd.*, 910 F.3d 1359 (11th Cir. 2018), *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579 (2d Cir. 2002), *Rowell v. Franconia Minerals Corp.*, 706 F. Supp. 2d 891 (D. Minn. 2010), *Simon Holdings PLC v. Klenz*, 878 F. Supp. 210 (1995), and *Thompson v. Deloitte & Touche LLP*, 503 F. Supp. 2d 1118 (2007), addresses only the requirements of § 1332 and does not implicate federal-question jurisdiction under § 1331 or claims arising under federal motor carrier statutes.

The dispositive inquiry is not the citizenship of the parties, but whether Plaintiff's claims arise under federal law. A suit arises under federal law where federal law creates the cause of action. See *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257 (1916); see also *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012).

Where Congress creates a private right of action under federal law—as it has under 49 U.S.C. § 14704(a)(2), federal-question jurisdiction exists independently of diversity considerations. See *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738 (1824).

16

**B. This Court Has Federal-Question Subject-Matter Jurisdiction Under 28 U.S.C. § 1331**

**1. Plaintiff's Claims Arise Directly Under Federal Law**

Plaintiff's claims arise directly under federal law, conferring subject-matter jurisdiction under 28 U.S.C. § 1331. Federal-question jurisdiction exists where federal law creates the cause of action or supplies the rule of decision governing the plaintiff's claims. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012); *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257 (1916).

Jurisdiction under § 1331 is determined by the existence of a federal question on the face of the well-pleaded complaint and does not depend on the citizenship of the parties. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908); *Mims*, 565 U.S. 368. This principle applies equally in cases involving foreign or diverse parties where the cause of action is created by federal law. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983).

Here, Plaintiff asserts claims arising under the Federal Motor Carrier Safety Administration ("FMCSA") Truth-in-Leasing Regulations, 49 C.F.R. Part 376, enforceable through the private right of action provided by Congress in 49 U.S.C. §

17

14704(a)(2). That statutory scheme imposes federal duties governing interstate motor carrier leasing, accounting, and compensation practices.

Because Plaintiff's claims are created by federal statute and arise under a comprehensive federal regulatory framework, they fall within the scope of 28 U.S.C. § 1331. See *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738 (1824); *Mims*, 565 U.S. 368.

To the extent Plaintiff asserts related state-law claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a), as those claims arise from the same case or controversy.

Accordingly, this Court has original subject-matter jurisdiction under 28 U.S.C. § 1331.

### 2. Section 14704(a)(2) Provides a Private Right of Action

Federal courts have consistently recognized private rights of action under the FMCSA regulatory scheme, including cases:

- *Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.*, 250 F. Supp. 2d 1151 (W.D. Mo. 2001)

- *Pelletier v. Landstar Sys., Inc.*, 541 F.3d 1278 (11th Cir. 2008)

- *Fox v. TransAm Leasing, Inc.*, 839 F.3d 1209 (10th Cir. 2016)

18

These authorities confirm that owner-operators may pursue federal claims against motor carriers for violations of leasing, accounting, and compensation obligations under federal law.

(a) **Sixth Circuit authority confirms enforceability of FMCSA Regulations:**

The Sixth Circuit has recognized that 49 U.S.C. § 14704 provides a private right of action for violations of federal motor carrier regulations, including the FMCSA Truth-in-Leasing Regulations. See *In re Arctic Express Inc. (OOIDA v. Comerica Bank)*, 636 F.3d 781 (6th Cir. 2011).

The court further recognized that 49 C.F.R. § 376.12 imposes enforceable obligations concerning accounting, escrow funds, and disclosure requirements in motor carrier–owner operator relationships.

These principles directly support Plaintiff's claims concerning improper deductions, settlement practices, and failure to provide required documentation under federal regulations.

Accordingly, Defendant's assertion that no federal cause of action exists is contrary to both the statutory text of 49 U.S.C. § 14704(a)(2) and binding and

19

persuasive federal authority recognizing private enforcement of FMCSA regulations.

(b) **Recent district authority confirms federal-question jurisdiction exists for § 14704(a)(2) claims:**

Recent authority within this District confirms that Truth-in-Leasing claims brought under 49 U.S.C. § 14704(a)(2) arise under federal law and are properly heard in federal court. In *Fetinci v. Rayco Logistics, LLC*, No. 23-11720 (E.D. Mich. 2024), the Court expressly held that owner-operators may pursue private damages actions under § 14704(a)(2) and rejected the argument that such claims fail for lack of subject-matter jurisdiction.

This Court's reasoning aligns with the overwhelming weight of federal authority recognizing that § 14704(a)(2) provides a private enforcement mechanism for violations of FMCSA Truth-in-Leasing Regulations. Accordingly, Defendant's attempt to recharacterize Plaintiff's claims as lacking a federal jurisdictional basis is contrary to controlling and persuasive authority.

(c) **Defendant's "no cause of action" argument is contrary to the statutory text:**

Defendant's assertion that no federal cause of action exists is inconsistent with the plain language of 49 U.S.C. § 14704(a)(2), which provides:

> "A carrier or broker providing transportation or service subject to jurisdiction under Chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part."

By its express terms, § 14704(a)(2) authorizes a private damages remedy for violations of the federal motor carrier regulatory scheme, including duties imposed under applicable statutes and regulations governing interstate motor carrier operations.

Accordingly, Defendant's position is inconsistent with the statutory enforcement mechanism enacted by Congress.

(d) **Recent Eastern District of Michigan authority directly rejects Defendant's jurisdictional argument:**

In *Fetinci v. Rayco Logistics, LLC*, No. 23-11720 (E.D. Mich. 2024), the Eastern District of Michigan rejected a Rule 12(b)(1) challenge arguing that 49 U.S.C. § 14704(a)(2) does not support private federal claims arising under the FMCSA Truth-in-Leasing Regulations.

21

The Court held that it would follow *Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.*, 250 F. Supp. 2d 1151 (W.D. Mo. 2003) and related persuasive authority and concluded that owner-operators may bring private actions for damages under § 14704(a)(2) for violations of the Truth-in-Leasing Regulations.

The Court's reasoning confirms that:

(i) Truth-in-Leasing regulations are enforceable through a private federal damages remedy;

(ii) § 14704(a)(2) provides the statutory basis for those claims; and

(iii) such claims arise under federal law for purposes of 28 U.S.C. § 1331.

Defendant's jurisdictional arguments are materially indistinguishable from those rejected by the Court in *Rayco* and should be rejected for the same reasons.

### 3. Defendant's *Grable/Mikulski* Authorities Are Inapplicable

Defendant's reliance on *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005), *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555 (6th Cir. 2007), and *Ohio ex rel. Skaggs v. Brunner*, 629 F.3d 527 (6th Cir. 2010), is misplaced.

22

Those cases address the narrow category of state-law claims that embed substantial federal issues. That framework does not apply where, as here, Plaintiff asserts claims created directly by federal statute.

Plaintiff's claims arise under federal law, specifically 49 U.S.C. § 14704(a)(2) and 49 C.F.R. Part 376, which independently supply both the duty and the remedy. Accordingly, the *Grable* doctrine is inapplicable.

## C. THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT

### 1. Defendant Purposefully Availed Itself of the Privileges and Protections of U.S. Interstate Commerce

Defendant purposefully availed itself of the privilege of conducting business in Michigan by:

(i) engaging in continuous interstate freight transportation through Michigan;

(ii) directing Plaintiff to perform transportation services involving Michigan routes;

(iii) deriving revenue from freight transported through Michigan and connected U.S. corridors;

23

(iv) operating within federally regulated interstate motor carrier systems governing U.S. commerce.

The parties' relationship involved repeated interstate freight movements through Michigan, including consistent use of the Port Huron border crossing as a principal point of entry and exit between Canada and the United States.

The parties' operating relationship was expressly connected to interstate transportation activities directed through Michigan, including repeated use of the Port Huron border crossing and substantial freight operations within the State of Michigan. The parties' contract further required compliance with applicable United States federal motor-carrier regulations governing interstate transportation. Defendant's attempt to characterize the relationship as purely Canadian is therefore inconsistent with the contractual terms and the operational realities reflected in the record.

Although portions of the parties' transportation operations occurred in Canada, the representative records demonstrate that the overwhelming majority of the parties' freight operations, mileage, and revenue-generating transportation activity occurred within the United States and, in substantial part, within Michigan.

As reflected in the representative load records (Exhibits B–D), Defendant's operations demonstrate sustained Michigan-connected freight activity within its U.S. transportation network. These records show that Michigan functioned as a recurring and central corridor in Defendant's interstate trucking operations.

Taken together, these facts satisfy purposeful availment under *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), because Defendant created continuing obligations within a federally regulated interstate transportation relationship with foreseeable consequences in the United States and Michigan.

Under *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), purposeful availment is established where a defendant creates continuing obligations and a sustained commercial relationship with foreseeable consequences in the forum state. Defendant's ongoing motor carrier relationship with Plaintiff, including repeated Michigan-directed freight operations, satisfies this standard.

### 2. Plaintiff's Claims Arise Out of or Relate to Defendant's Michigan-Directed Conduct

Plaintiff's claims arise directly out of and relate to Defendant's Michigan-directed interstate transportation activities. The compensation practices, settlement calculations, chargebacks, leasing conduct, and recordkeeping violations challenged

in this action were not isolated or forum-neutral events. They arose from Defendant's continuous interstate freight operations purposefully routed through Michigan as an integral component of Defendant's commercial transportation network.

Defendant repeatedly dispatched Plaintiff through the Port Huron, Michigan corridor as the principal operational gateway between Ontario and the United States. The interstate freight movements underlying Plaintiff's compensation were systematically routed into, through, and out of Michigan under Defendant's dispatch control and operational direction. The mileage, freight revenue, fuel-tax reporting, settlement calculations, and compensation records at issue in this action were therefore generated directly from Michigan-centered interstate transportation activity.

The Truth-in-Leasing claims asserted by Plaintiff arise from Defendant's alleged failure to provide federally required compensation transparency, freight documentation, settlement information, and supporting records associated with those interstate operations. Those alleged violations are inseparable from the Michigan-directed transportation routes through which the underlying freight movements were conducted.

26

The Sixth Circuit applies a lenient standard to the "arising from" requirement, requiring only that the cause of action have a substantial connection with the defendant's forum-related conduct or that the claims be made possible by the defendant's contacts with the forum. See *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968). Here, Plaintiff's claims plainly satisfy that requirement because the alleged statutory violations arose directly from Defendant's Michigan-centered interstate trucking operations and the compensation structure tied to those operations.

Nor are Defendant's Michigan contacts random, fortuitous, or attenuated. Michigan served as the operational hub through which Defendant accessed the United States freight market, generated transportation revenue, and conducted the interstate activities giving rise to Plaintiff's claims. Defendant's own routing structure therefore establishes the direct relationship between the forum, the interstate transportation activity, and the federal statutory violations alleged in the Complaint.

Under *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), specific jurisdiction exists where claims sufficiently "relate to" the defendant's forum conduct, even absent strict causation. Plaintiff's claims satisfy that standard because they arise from the very interstate transportation operations

27

Defendant deliberately and repeatedly directed through Michigan in the ordinary course of its business.

### 3. Exercising Jurisdiction Comports with Traditional Notions of Fair Play and Substantial Justice

Defendant voluntarily entered a federally regulated interstate transportation system governed by United States law. Permitting a carrier to obtain the commercial benefits of participation in that system while avoiding judicial accountability for alleged violations arising from those same operations would undermine the regulatory framework established by Congress under 49 U.S.C. § 14704(a)(2) and 49 C.F.R. Part 376.

Exercising personal jurisdiction over Defendant fully comports with traditional notions of fair play and substantial justice. Defendant is not an isolated foreign entity with accidental or attenuated contact with Michigan. Rather, Defendant deliberately and systematically structured its interstate trucking operations around repeated commercial use of Michigan as a principal gateway into and out of the United States transportation market.

Defendant voluntarily entered and profited from a federally regulated interstate transportation system governed by United States law. Defendant obtained federal operating authority from the Federal Motor Carrier Safety Administration permitting

28

it to conduct interstate commerce throughout the United States, repeatedly dispatched freight through Michigan under its own routing and operational control, and derived commercial revenue from those Michigan-directed transportation activities.

Having purposefully invoked the benefits and protections of United States interstate commerce laws, Defendant cannot now claim unfairness in being required to answer in a United States court for alleged violations arising directly from those same federally regulated operations.

Michigan possesses a substantial interest in adjudicating disputes arising from repeated interstate commercial transportation activity routed through its borders and interstate highway infrastructure. Plaintiff likewise possesses a strong interest in obtaining convenient and effective relief in a forum substantially connected to the interstate transportation operations giving rise to the claims asserted herein. It is, after all, Defendant that required Plaintiff to drive through Michigan in most cases.

Moreover, the exercise of jurisdiction over Defendant is entirely foreseeable. Defendant repeatedly directed freight movements through Michigan in the ordinary course of its business, utilized Michigan as a recurring operational transit corridor, and engaged in continuous interstate transportation activities governed by federal law. Under such circumstances, Defendant should reasonably anticipate being haled

into court in Michigan for disputes arising from those operations. See *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985); *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

Accordingly, the exercise of specific personal jurisdiction over Defendant is constitutionally reasonable and fully consistent with due process.

### 4. Defendant's Reliance on *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017), Is Misplaced

Defendant relies on *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017), which address general personal jurisdiction and the limited circumstances under which a corporation is "at home" in a forum.

Plaintiff does not invoke general personal jurisdiction and invokes solely specific personal jurisdiction. Specific jurisdiction is governed by the constitutional due process framework set forth in cases including *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), which clarifies that jurisdiction is proper where the defendant has purposefully engaged in forum-related conduct and the claims arise out of or relate to that conduct.

Defendant correctly states the applicable due process framework for specific jurisdiction. However, Defendant's analysis improperly construes "related to"

contacts narrowly, contrary to controlling Supreme Court authority in *Ford*, which confirms that specific jurisdiction exists where a defendant's forum contacts relate to the plaintiff's claims, even absent strict causal origination within the forum. As set forth in *Ford*, specific jurisdiction does not require that the defendant be "at home" in the forum state.

### 5. *Walden* Supports Jurisdiction Because the Relevant Contacts Are Defendant's Own Michigan-Directed Activities

Under *Walden v. Fiore*, 571 U.S. 277 (2014), personal jurisdiction must be based on the defendant's contacts with the forum State itself, not on the plaintiff's contacts with the forum or unilateral activity. Here, Defendant's own operational conduct, dispatching freight through Michigan and integrating Michigan routes into its interstate logistics network, forms the basis of jurisdiction. Walden supports jurisdiction because the relevant contacts are defendant's own Michigan-directed activities

Defendant's reliance on *Walden v. Fiore*, 571 U.S. 277 (2014), supports rather than defeats personal jurisdiction in this case. *Walden* holds that jurisdiction must arise from the defendant's own deliberate contacts with the forum state, not merely from the plaintiff's residence or unilateral activities. Here, Plaintiff does not rely on his own residence, citizenship, or unilateral conduct as the basis for jurisdiction.

31

Rather, jurisdiction arises from Defendant's own systematic and deliberate interstate transportation activities repeatedly directed through Michigan.

The record reflects that Defendant intentionally organized substantial portions of its interstate trucking operations around the Port Huron, Michigan corridor and repeatedly dispatched freight through Michigan as part of its ordinary commercial operations. Defendant's routing structure, dispatch control, interstate mileage accumulation, cross-border freight movements, compensation-generating transportation activity, and federally regulated trucking operations all involved recurring and purposeful Michigan contacts created by Defendant itself.

Unlike in *Walden*, where the defendant's relevant conduct occurred entirely outside the forum state, the operative conduct here repeatedly involved Michigan as a central operational component of Defendant's interstate transportation network. Michigan was not connected to this dispute merely because of Plaintiff's location or subjective connections to the forum. Rather, Michigan was repeatedly and intentionally utilized by Defendant as a principal gateway into the United States transportation market and as a substantial component of the interstate operations giving rise to Plaintiff's claims.

Plaintiff's claims arise directly from those Michigan-directed transportation activities. The compensation practices, settlement calculations, dispatch-controlled

freight movements, and alleged Truth-in-Leasing violations challenged in this action were generated through interstate transportation operations repeatedly routed through Michigan under Defendant's authority and control.

Walden expressly distinguishes between jurisdiction based solely on a plaintiff's forum connections and jurisdiction based on the defendant's own deliberate forum-related conduct. This case falls squarely within the latter category. Defendant's repeated commercial use of Michigan, its continuous interstate routing through Michigan, and its purposeful participation in federally regulated transportation activities involving Michigan establish constitutionally sufficient minimum contacts under *Walden*, *International Shoe*, *Burger King*, and *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021).

Defendant's Rule 12(b)(2) authorities support a *prima facie* standard favorable to Plaintiff. Defendant cites *Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991), *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002), and *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212 (6th Cir. 1989). Those cases confirm that, at the Rule 12(b)(2) stage without an evidentiary hearing, Plaintiff need only make *a prima facie* showing of jurisdiction, and all factual disputes must be resolved in Plaintiff's favor.

Defendant has not submitted evidence negating its Michigan-directed interstate transportation activity. Instead, it offers characterizations of the record that are contradicted by Plaintiff's jurisdictional exhibits attached hereto.

Under Defendant's own authorities, dismissal is inappropriate where jurisdictional facts remain disputed or require further factual development.

### 6. The Court Must Evaluate Defendant's Michigan Contacts Based on Practical Commercial Realities

The Sixth Circuit has instructed that personal jurisdiction analysis focuses on practical commercial realities rather than formalistic or "pedantic quibbling" over statutory framing, emphasizing whether a defendant's business activities create substantial contacts with the forum sufficient to satisfy constitutional due process. The Sixth Circuit's decision in *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968), establishes a flexible, three-part test for specific personal jurisdiction, focusing on (1) purposeful availment, (2) relatedness, and (3) reasonableness. The court emphasized that jurisdiction is not defeated by formalistic distinctions but depends on whether the defendant engaged in conduct creating substantial, continuing, and foreseeable contacts with the forum such that it should reasonably anticipate being haled into court there.

34

## D. Defendant's Cited Authorities Ultimately Undermine Rather Than Support Dismissal

Although Defendant recites general jurisdictional principles, the authorities it cites, properly applied, confirm that Plaintiff has sufficiently alleged both federal-question jurisdiction and a prima facie basis for specific personal jurisdiction at this stage.

### 1. Defendant's Reliance on *Ford Motor Co. v. Montana Eighth Judicial District Court* Supports Jurisdiction

Defendant relies on *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), but that decision undermines rather than supports dismissal.

In *Ford*, the Supreme Court rejected a rigid causal requirement for specific jurisdiction and held that claims need only "relate to" a defendant's forum-directed activities. The Court further emphasized that where a defendant systematically serves a market and engages in sustained forum-related conduct, specific jurisdiction may properly extend to claims connected to that conduct.

Here, Defendant engaged in continuous interstate trucking operations directed through Michigan and the United States, including federally regulated owner-

35

operator transportation activities. Plaintiff's claims arise from and relate to those same interstate transportation operations.

Accordingly, *Ford* supports the exercise of specific jurisdiction in this case.

### 2. *Burger King* Confirms that Continuing Interstate Commercial Relationships Support Jurisdiction

Defendant's reliance on *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), likewise, supports jurisdiction rather than defeating it.

*Burger King* held that physical presence in the forum is not required where a defendant has created continuing obligations and an ongoing commercial relationship with foreseeable consequences in the forum.

The relationship at issue here involves ongoing, federally regulated interstate transportation operations, dispatch control, and compensation tied to U.S. freight revenue. Defendant's own cited authority therefore supports the conclusion that Defendant purposefully established a continuing commercial relationship giving rise to forum-related consequences.

### 3. *CompuServe* Supports Purposeful, Ongoing Commercial Contact

36

Defendant's reliance on *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996), is similarly misplaced. *CompuServe* recognizes that sustained commercial activity purposefully directed into a forum may establish sufficient minimum contacts even without physical presence. Defendant's repeated interstate freight operations, cross-border dispatching, and integration into U.S. motor carrier systems constitute comparable, and in many respects more substantial, forum-directed commercial conduct.

**4. Defendant's Rule 12(b)(2) Authorities Support a *Prima Facie* Standard Favorable to Plaintiff**

Defendant cites *Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991), *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002), and *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212 (6th Cir. 1989).

Those cases confirm that, at the Rule 12(b)(2) stage without an evidentiary hearing, Plaintiff need only make a *prima facie* showing of jurisdiction, and all factual disputes must be resolved in Plaintiff's favor.

Under Defendant's own authorities, dismissal is inappropriate where jurisdictional facts remain disputed or require further factual development.

**5. Defendant's General Jurisdiction Authorities are Inapplicable**

37

Defendant's reliance on *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017), is misplaced. Those cases address general jurisdiction, which Plaintiff does not invoke. Plaintiff's claims are based exclusively on specific personal jurisdiction, governed by *Ford* and *Burger King*, which focus on forum-related conduct giving rise to or relating to the claims.

### 6. Defendant's Federal-question Authorities are Distinguishable

Defendant's reliance on cases addressing jurisdictional limitations under 28 U.S.C. § 1331 is inapposite. Cases such as *Ohio ex rel. Skaggs v. Brunner*, 629 F.3d 527 (6th Cir. 2010), and similar authorities involve either state-law claims with embedded federal issues or federal statutes lacking a private right of action.

By contrast, Plaintiff expressly asserts claims under 49 U.S.C. § 14704(a)(2), which provides a statutory private right of action, and under 49 C.F.R. Part 376, which governs motor carrier leasing and related obligations.

Federal law supplies both the substantive duties and the enforcement mechanism at issue. Accordingly, Defendant's cited authorities do not govern the claims presented here.

## V. CONCLUSION

Defendant's Motion to Dismiss should be denied in its entirety.

Plaintiff's Complaint expressly asserts federal statutory causes of action arising under the Truth-in-Leasing provisions governing federally regulated interstate motor carriers and invokes this Court's federal-question jurisdiction under 28 U.S.C. § 1331. Defendant's extensive arguments concerning diversity and alienage jurisdiction under 28 U.S.C. § 1332 are therefore legally irrelevant to the claims actually asserted.

Plaintiff has also established a *prima facie* basis for specific personal jurisdiction. The record demonstrates that Defendant deliberately and repeatedly directed substantial interstate transportation operations through Michigan as part of its ordinary commercial business activities. Defendant organized its cross-border freight operations around the Port Huron, Michigan corridor, generated revenue through Michigan-directed interstate transportation assignments, and engaged in continuous federally regulated trucking activity involving the State of Michigan.

Plaintiff's claims arise directly from those Michigan-centered interstate transportation operations, including the compensation practices, settlement calculations, dispatch-controlled freight movements, and alleged violations of the federal Truth-in-Leasing regulatory framework challenged in this action.

Under *Southern Machine*, *Burger King*, *Ford Motor*, *Walden*, and *International Shoe*, Defendant's deliberate and recurring Michigan-directed commercial conduct

39

establishes constitutionally sufficient minimum contacts with the forum. Exercising jurisdiction over Defendant is entirely foreseeable, reasonable, and consistent with traditional notions of fair play and substantial justice.

At this stage, Plaintiff need only make a *prima facie* showing of jurisdiction, and all factual disputes must be resolved in Plaintiff's favor. Defendant's motion improperly attempts to minimize or recharacterize the extensive Michigan-related interstate operations reflected throughout the jurisdictional record. Those disputed factual issues cannot be resolved against Plaintiff on a Rule 12(b)(2) motion decided without an evidentiary hearing.

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(2) and grant such further relief as the Court deems just and proper.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED.**

Marek Petrykowski

Dated: May 18, 2026  _____

41 Kings Heights Dr. SE, Airdrie, AB, T4A 0E6

226-235-8773, petrykowski.marek@gmail.com

## CERTIFICATE OF SERVICE

I certify that on May 19, 2026, I served the foregoing Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, Plaintiff's Declaration, and supporting Exhibits on counsel for Defendant JDW International, Inc. via email at the email address designated for service pursuant to the parties' agreement and consent to electronic service dated May 9, 2026.

This method of service was used in accordance with the parties' email service consent and the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 19, 2026

_____

Marek Petrykowski
Plaintiff Pro Se
41 Kings Heights Dr. SE
Airdrie, AB, T4A 0E6
226-235-8773
petrykowski.marek@gmail.com

41