# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

**MAREK PETRYKOWSKI**

Plaintiff

v.

**JDW  INTERNATIONAL INC.**
(Ontario  Corporation  No. 1001407417),  successor  by amalgamation  to  2051782 Ontario Ltd.

Defendant

Case No. 2:26-cv-10040
Hon. Laurie J. Michelson

## DECLARATION OF MAREK PETRYKOWSKI

**(In Support of Plaintiff's opposition to RR 12(b)(1) and 12(b)(2) FRCP motion)**

I, Marek Petrykowski, declare as follows:

## A. PERSONAL KNOWLEDGE

[1]     I am the Plaintiff in this action. I have personal knowledge of the facts stated in this Declaration and could testify competently to them if called as a witness.

[2]     I submit this Declaration in support of my opposition to Defendant JDW International, Inc.'s Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2).

## B. PURPOSE OF DECLARATION

[3]     This Declaration authenticates and describes the attached exhibits, which reflect Defendant JDW International, Inc.'s interstate motor carrier operations involving Canada and the United States, including repeated freight activity involving the State of Michigan.

[4]     The following exhibits are submitted to demonstrate Defendant's operational routing structure, cross-border freight activity, regulatory framework, and Michigan-directed interstate transportation operations relevant to subject-matter jurisdiction and personal jurisdiction:

**EXHIBIT A** - Attached as Exhibit A is true and correct JURISDICTION FACT TABLE generated from contractual records maintained during Plaintiff's work for Defendant;

**EXHIBIT B** - Attached as Exhibit B is a true and correct list of representative outbound loads generated from freight records maintained during Plaintiff's work for Defendant;

**EXHIBIT C** – Attached as Exhibit C is a true and correct list of representative loads from the U.S.A. to Ontario.;

**EXHIBIT D** – Attached as Exhibit D is a true and correct list of representative Loads directly to and from Michigan (Origin or Destination);

**EXHIBIT E** – Attached as Exhibit E is a true copy of the Defendant's FMCSA SAFER registration snapshot identifying Defendant as a federally regulated motor carrier authorized to engage in interstate commerce;

**EXHIBIT F** – Attached as Exhibit C is a true copy of the Defendant's Motor Carrier (MC) operating authority issued by the Federal Notor Carrier Safety Administration;

**EXHIBIT G** – Attached as Exhibit G is are 10 true and correct representative Automated Commercial Environment US Customs manifests ("ACE") for customs clearance when entering the U.S.A. in Port Huron, MI as point of entry;

**EXHIBIT H** – Attached as Exhibit H are 10 true and correct representative Advance Commercial Information manifests ("ACI") for customs clearance for loads going from the U.S.A. to Canada through Port Huron, MI as point of exit;

**EXHIBIT I** – Attached as Exhibit I are 10 true and correct representative weekly Pay Statements as provided by Defendant;

**EXHIBIT J –** Attached as Exhibit J is a true and correct copy of Defendant's Cab Card and interstate operating authority permitting transportation in the United States;

**EXHIBIT K** – Attached as Exhibit K is a true and correct copy of Defendant's Heavy Hiway Vehicle Schedule for 2026;

**EXHIBIT L** – Attached as Exhibit L is a true and correct Defendant's 2026 Unified Carrier Registration ("UCR"), which identifies Michigan as Defendant's base state for interstate operations;

## C. OVERVIEW OF DEFENDANT'S INTERSTATE OPERATIONS

[5]     Defendant JDW International, Inc. operates as a motor carrier engaged in freight transportation between Canada and the United States in the ordinary course of business.

[6]     Defendant's operations involve continuous interstate trucking activity conducted under federal motor carrier regulatory authority issued by the United States Federal Motor Carrier Safety Administration ("FMCSA").

[7]     Exhibits B through D reflect recurring freight movements between Ontario, Canada and destinations throughout the United States as part of Defendant's regular commercial operations.

## D. MICHIGAN-CENTERED INTERSTATE OPERATIONS

[8]     During the course of my working relationship with Defendant, the interstate transportation operations I performed were overwhelmingly centered in the United States and, in particular, the State of Michigan.

[9]     Defendant regularly dispatched me on cross-border freight routes entering and exiting the United States through Port Huron, Michigan, which functioned as the primary operational gateway for Defendant's freight movements between Ontario and the United States.

[10]    Defendant's use of Michigan was not random, fortuitous, or merely incidental to interstate routing. Rather, Michigan was intentionally selected and repeatedly utilized by Defendant as the principal point of entry into and exit from the United States because Defendant's trucking operations were organized around the Port Huron border crossing and Michigan interstate highway infrastructure.

[11]    In the overwhelming majority of my dispatched trips, Defendant routed freight through Michigan as the operationally necessary and commercially efficient gateway into the United States transportation market.

[12]    Defendant's routing decisions were made under Defendant's dispatch control and were designed to minimize mileage, reduce fuel and operating costs, facilitate customs processing, and satisfy customer delivery schedules.

[13]     Had Defendant instead routed freight through alternative border crossings, including crossings located in New York, total trip mileage and operational costs would have increased substantially and delivery timing requirements could not have been met.

[14]     Because Defendant's terminal operations were located in Sarnia, Ontario, immediately adjacent to Port Huron, Michigan, I frequently traveled only minimal mileage within Ontario before entering Michigan.

[15]     As a result, Michigan routinely constituted the single largest jurisdictional component of my interstate transportation assignments and represented the state in which the greatest portion of my United States mileage was accumulated.

[16]     Based upon the representative trip and mileage records attached as Exhibits B through D, approximately 98.38% of the sampled transportation mileage occurred within the United States, while only approximately 1.62% occurred within Canada.

[17]     Of the United States mileage reflected in the sampled records, approximately 65.15% occurred within Michigan alone, making Michigan the single largest jurisdiction in which I performed transportation services for Defendant.

[18]    The exhibits further reflect recurring freight movements involving the State of Michigan as either the origin, destination, or operational transit corridor of shipments in Defendant's interstate transportation operations.

[19]    Exhibits G and H, consisting of ACE and ACI manifests, reflect cross-border freight movements routinely utilizing established United States–Canada border crossings, including repeated entries and exits through the Port Huron, Michigan corridor.

[20]    The Port Huron, Michigan crossing appears consistently throughout the manifest records submitted and reflects its recurring operational use in Defendant's cross-border freight operations.

[21]    Taken together, the exhibits reflect that Michigan was repeatedly and systematically involved in Defendant's interstate freight routing structure and functioned as a central operational component of Defendant's United States transportation activities.

## E. COMPENSATION AND MICHIGAN-RELATED OPERATIONS

[22]    Michigan was also the state in which the greatest portion of the compensation at issue in this action was generated.

[23]     My compensation was calculated by Defendant based upon freight revenue associated with interstate transportation assignments routed through Michigan and the United States.

[24]     The compensation, deductions, settlement calculations, chargebacks, and accounting practices challenged in this action arise directly from those Michigan-centered interstate transportation operations.

[25]     The Truth-in-Leasing violations alleged in this action, including failures to provide required freight documentation, settlement transparency, and supporting compensation records, directly relate to the same interstate freight movements routed through Michigan.

[26]     Defendant has refused to provide documentation necessary to verify compensation and deductions associated with loads transported into, out of, and through Michigan as part of Defendant's federally regulated interstate transportation operations.

[27]     Because Michigan constituted the principal operational gateway for Defendant's United States freight operations, I also incurred and reported substantial IFTA fuel-tax mileage attributable to Michigan.

[28]     Michigan therefore was not merely a pass-through jurisdiction, but a central operational and commercial component of Defendant's interstate trucking business and the transportation activities giving rise to this action.

## F. FEDERAL REGULATORY STATUS

[29]     Exhibit E reflects Defendant's FMCSA SAFER registration identifying Defendant as a federally regulated motor carrier authorized to engage in interstate commerce.

[30]     Exhibit F reflects Defendant's Motor Carrier ("MC") operating authority issued by the Federal Motor Carrier Safety Administration.

[31]     Exhibit J reflects Defendant's cab card and interstate operating authority permitting commercial transportation across multiple United States jurisdictions.

[32]     Exhibit L reflects Defendant's 2026 Unified Carrier Registration ("UCR"), which identifies Michigan as Defendant's base state for interstate operations.

## G. SCALE OF OPERATIONS

[33]     Exhibit K reflects that Defendant operates a fleet of approximately fifty trucks engaged in interstate commercial transportation.

[34]     This fleet structure is consistent with ongoing multi-jurisdictional interstate trucking operations throughout the United States and Canada.

## H. CROSS-BORDER SHIPPING SYSTEMS

[35]   Exhibit G contains 10 sample Automated Commercial Environment ("ACE") manifests reflecting freight movements into and within the United States with Port Huron as point of entry.

[36]   Exhibit H contains 10 sample Advance Commercial Information ("ACI") manifests reflecting freight movements into Canada using Port Huron as exit point.

[37]   These records reflect Defendant's participation in regulated cross-border freight systems supporting continuous interstate commerce.

## I. COMPENSATION RECORDS

[38]   Exhibit I consists of weekly pay statements reflecting compensation tied to freight movements performed under Defendant's dispatch and operational control.

[39]   These payments correspond to interstate freight activity reflected in the shipping and manifest records.

## J. SUMMARY OF MICHIGAN CONTACTS

[40]   The exhibits collectively reflect that Defendant's interstate motor carrier operations include recurring freight movements involving the State of Michigan.

[41]   Michigan appears throughout Defendant's operational routing through documented freight shipments, cross-border entries and exits through the Port Huron

corridor, interstate mileage records, and compensation-generating transportation activities.

[42] These Michigan-related contacts are recurring, deliberate, and systematic in nature and occur in the ordinary course of Defendant's interstate commercial operations.

[43] Plaintiff's claims arise directly from Defendant's interstate motor carrier activities, including the Michigan-related transportation operations described above.

[44] Attached Exhibits E through M further demonstrate Defendant's substantial and continuous participation in United States interstate commerce and Michigan-directed transportation activities, including Defendant's USDOT and MC operating authority, cab-card authority for all United States jurisdictions, ACE and ACI cross-border manifests, interstate vehicle registrations, and UCR registration identifying Michigan as Defendant's base state for interstate operations.

## K. CONCLUSION

[45] The attached exhibits collectively demonstrate that Defendant JDW International, Inc. engages in continuous interstate motor carrier operations that repeatedly and systematically involve the State of Michigan as part of its freight transportation network.

[46] These operations reflect structured, ongoing, and purposeful interstate commercial activity relevant to this Court's analysis of personal jurisdiction and subject-matter jurisdiction.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: May 19, 2026

Airdrie, Alberta, Canada

_____

Marek Petrykowski
Plaintiff, Pro Se