# EXHIBIT A

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice
Electronically amended pursuant to Rule 26.02(a)
on this 16th day of April 2026.

**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

Michelle Agudelo

Digitally signed by Michelle Agudelo
Date: 2026.04.16 12:28:14 -04'00'

CV-26-00000007-0000

## *ONTARIO*

### SUPERIOR COURT OF JUSTICE

*BETWEEN:*

**MAREK PETRYKOWSKI**

Plaintiff

— and —

**1. JDW INTERNATIONAL INC. [(Ont. Corp. No. 1001407417) (successor by amalgamation to 2051782 ONTARIO LTD)]**

**2. JEFFREY JOHN DEWOLF**

**3. VICTORIA ALEXANDRA DIACONESCU**

Defendants

## AMENDED STATEMENT OF CLAIM

(Under Rules 76 and 26.02(a) of the *Rules of Civil Procedure*)

**TO THE DEFENDANTS:**

**A LEGAL PROCEEDING HAS BEEN COMMENCED AGAINST YOU** by the plaintiff. The claim made against you is set out in the following pages.

**IF YOU WISH TO DEFEND THIS PROCEEDING**, you, or an Ontario lawyer acting for you, must prepare a statement of defence in Form 18A prescribed by the Rules of Civil Procedure, serve it on the plaintiff and file it, with proof of service in this court office, **WITHIN TWENTY DAYS** after this statement of claim is served on you, if you are served in Ontario.

If you are served in another province or territory of Canada or in the United States of America, the period for serving and filing your Statement of Defence is forty days. If you are served outside Canada and the United States of America, the period is sixty days.

Page 1

Electronically filed / Déposé par voie électronique · 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

Instead of serving and filing a statement of defence, you may serve and file a notice of intent to defend in Form 18B prescribed by the Rules of Civil Procedure. This will entitle you to ten more days within which to serve and file your statement of defence.

**IF YOU FAIL TO DEFEND THIS PROCEEDING,** judgment may be given against you in your absence and without further notice to you.

**IF YOU WISH TO DEFEND THIS PROCEEDING BUT ARE UNABLE TO PAY LEGAL FEES,** legal aid may be available to you by contacting a local Legal Aid Office.

**TAKE NOTICE:** THIS ACTION WILL AUTOMATICALLY BE DISMISSED if it has not been set for trial or terminated by any means within five years after the action was commenced, unless otherwise ordered by the court.

**Issued on:**   January ___, 2026

**Issued by:** _____
                         *Local Registrar*

**Court Office:**
Sarnia Superior Court of Justice
700 N. Christina Street, Sarnia, ON,
N7V 3C2

TO:

**JDW INTERNATIONAL INC.**

Registered Office: 2365 Dixie Road, Mississauga, Ontario L4Y 0E6, Canada.

Service may be effected personally on the corporation at its registered office, or on any officer or director at the addresses for service filed with the Ontario Ministry of Public and Business Service Delivery, including:

1. Andreea Crisan, President – 3950 Hickmore Rue, Unit 105, Saint-Laurent, Quebec H4T 1K2, Canada;
2. Ilie Crisan, Vice-President – 3950 Hickmore Rue, Unit 105, Saint-Laurent, Quebec H4T 1K2, Canada;

Page 2

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-26-00000007-0000

3. Franck Marvel Ngandui, Secretary – 2955 Jean-Baptiste-Deschamps Boulevard, Lachine, Quebec H8T 1C5, Canada.

**AND TO:**

**JEFFREY JOHN DEWOLF**

Address for Service: 1956 Lakeshore Road, Sarnia, Ontario, N7X 1E7, Canada.

(Personal service on the individual, being a former director and controlling mind of the predecessor corporation, 2051782 Ontario Ltd.; this address is listed in corporate records after amalgamation and is believed to be the individual's last known address.)

**AND TO:**

**VICTORIA ALEXANDRA DIACONESCU**

Address for Service: 1956 Lakeshore Road, Sarnia, Ontario, N7X 1E7, Canada.

(Personal service on the individual, being a former director and controlling mind of the predecessor corporation, 2051782 Ontario Ltd.; this address is listed in corporate records after amalgamation and is believed to be the individual's last known address.)

**THIS ACTION IS BROUGHT AGAINST YOU UNDER THE SIMPLIFIED PROCEDURE PROVIDED IN RULE 76 OF THE RULES OF CIVIL PROCEDURE.**

## CLAIM

## I. THE PARTIES

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

## Plaintiff

[1]     The Plaintiff, Marek Petrykowski, is a dependent contractor and truck owner-operator who performed work exclusively for the Defendants under a written agreement, titled **"JDW INTERNATIONAL OWNER OPERATOR CONTRACT"**, dated March 4, 2019 (the "Agreement").

## Corporate Defendant

[2]     JDW INTERNATIONAL INC. [(OCN 1001407417) (the "NEW JDW")] is an Ontario corporation formed by amalgamation on November 6, 2025, pursuant to the *Business Corporations Act* (Ontario), of 2051782 Ontario Ltd. (the "OLD JDW").

[3]     For the purposes of this Statement of Claim, the term "JDW" is used collectively to refer to both the OLD JDW and the NEW JDW. The Plaintiff pleads that, following the amalgamation, the NEW JDW continued to operate substantially the same business as the OLD JDW, including the same management, personnel, operating authorities, customers, and systems. Where necessary for clarity, the context will indicate whether a particular allegation, act, or transaction pertains specifically to the OLD JDW or the NEW JDW. References to "JDW" without qualification are intended to encompass both entities collectively and to preserve the Plaintiff's claims in respect of operational and legal continuity between the OLD JDW and the NEW JDW.

## Individual Defendants

[4]     **JEFFREY JOHN DEWOLF** ("Jeff") was, until the amalgamation, and at all material times prior thereto, the President, Secretary, and Treasurer of the OLD JDW. The Plaintiff has reason to believe and pleads that, following the amalgamation, Jeff has

Page 4

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-26-00000007-0000

continued to exercise management and control over the business carried on by the NEW JDW, including in respect of the matters pleaded herein.

[5] **VICTORIA ALEXANDRA DIACONESCU** ("Victoria"), was, until the amalgamation, and at all material times prior thereto, responsible for, and in apparent control of, the OLD JDW's accounting, payroll, safety, and customer relations. The Plaintiff has reason to believe and pleads that, following the amalgamation, Victoria has continued to perform substantially the same functions for the NEW JDW, including in respect of the matters pleaded herein.

## II. JURISDICTION, FORUM AND PROTECTIVE FILING

[6] This action is properly brought in Ontario. The corporate Defendant is an Ontario corporation, and the contractual and settlement practices at issue were administered and controlled from Ontario. The impugned conduct—including compensation calculation, currency conversion practices, accounting and settlement decisions, and the withholding of settlement and revenue records—was directed, authorized, and implemented from Ontario.

[7] The individual Defendants, Jeff and Victoria, personally participated in, directed, authorized, or acquiesced in the impugned conduct in their capacities as officers and controlling minds of the corporate Defendant. At all material times, they exercised decision-making authority over compensation practices, disclosure of settlement information, and responses to the Plaintiff's inquiries from Ontario.

Page 5

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

[8]     This action asserts claims in contract, tort, equity, and successor liability under Ontario law. While the Plaintiff has commenced related proceedings in the United States arising from the same factual matrix, those proceedings assert distinct statutory rights under U.S. law and do not seek personal liability against the individual Defendants.

[9]     The Plaintiff brings this action in Ontario to preserve his legal and contractual rights in the event that the United States courts decline to assume jurisdiction. While the majority of the contractual performance occurred outside Ontario, Ontario has a real and substantial connection to this matter through the governance of the corporate Defendant, the location of certain administrative functions, and the personal conduct of the individual Defendants. While both this action and the U.S. action arise from the same underlying factual circumstances, the causes of action, legal frameworks, and relief sought are distinct. The Ontario action is brought under Ontario contract, tort, equity, and common law, whereas the U.S. action asserts statutory rights under U.S. law, with supplementary state-law claims. The Plaintiff does not intend this filing to create duplicative litigation; should both actions proceed to final determination, the Plaintiff will enforce only one judgment to avoid double recovery.

## III.  FACTS

[10]     This action arises from a concealed compensation structure in which the Defendants exercised exclusive control over revenue information, misrepresented currency conversions, and withheld settlement and accounting records, thereby depriving the Plaintiff, a dependent contractor, of any practical ability to verify his compensation and resulting in underpayment.

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

## A. The Agreement and Initial Representations

[11] Under the Agreement, the Plaintiff was entitled to receive 75% of gross revenue. Although the Agreement labels the Plaintiff an independent contractor, in substance, the Plaintiff was a dependent contractor within the meaning recognized for purposes of vulnerability, good faith, and honest performance. The Plaintiff hauled loads exclusively for the Defendants, operated solely under the Defendants' operating authorities and permits, and derived virtually all of his income from the Defendants, rendering him economically dependent and integrated into their business. The Plaintiff had no independent access to customer invoices, freight rates, or currency information and was therefore entirely dependent on the Defendants for accurate disclosure of gross revenue and settlement calculations.

[12] At the time of entering into the Agreement, on the Plaintiff's inquiries, Jeff represented to the Plaintiff that:

a) customers paid in Canadian dollars (CAD);

b) if U.S. dollars (USD) were ever received, RBC exchange rates would be used;

c) the company supplied fuel cards issued by BVD which the Plaintiff could use to receive BVD volume discounts and that invoices would be provided weekly with settlements; and

d) no additional fuel-card fees would apply and amounts deducted for fuel purchases would exactly match the invoiced amounts.

[13] The Plaintiff relied on these representations in entering into and continuing to perform the Agreement.

Page 7

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

[14]    In mid-August 2022, the Plaintiff overheard other owner-operators discussing loads that had been paid in USD. This prompted the Plaintiff to request documentation to verify that he was receiving 75% of gross revenue. Victoria initially agreed only to highly limited and restricted review appointments. A meeting took place on September 20, 2022, during which the Defendant produced documents relating to only a small number of loads. These documents did not disclose the currency in which customers had paid. In response to the Plaintiff's inquiries, Victoria explained that almost all customers paid in CAD, that any USD-paid loads were converted using Royal Bank of Canada ("RBC") exchange rates, and that the Plaintiff was not paid in USD because USD loads were rare. The limited documentation produced at that time did not reveal any discrepancies in the Plaintiff's compensation.

## B.    Concerns About USD Revenue.

[15]    Victoria further stated, at the meeting, that the fee for local pickup or delivery was 75 CAD regardless of the customer's currency and undertook to provide fuel purchase invoices by email, which she never did. The Plaintiff later discovered that these statements were false.

## C.    Discovery of Improper Exchange Rates and Fuel Payment Scheme.

[16]    On January 16, 2024, in response to a specific inquiry regarding load number 116535, the Plaintiff received information from the Defendants' accounting department indicating that the load had been paid in USD and settled using an exchange rate of 1.25. At the time, the prevailing RBC exchange rate was materially higher. Prior to this disclosure, the Defendants had represented that USD-paid loads were rare and that any

Page 8

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

such payments were converted using RBC exchange rates. This disclosure constituted the first concrete information available to the Plaintiff indicating that a material portion of the Defendants' loads were paid in USD and that undisclosed exchange rates were being applied. The Plaintiff has since discovered that this was not an isolated occurrence, but rather part of a systemic pattern of underpayment. This was the first concrete information available to the Plaintiff indicating that a material portion of revenue was paid in USD and that undisclosed exchange rates were systematically applied, confirming the Plaintiff's inability to verify his contractual compensation until that point.

[17]   Following this disclosure, the Plaintiff made multiple follow-up requests to examine the required documentation. The Defendants refused to provide meaningful access, instead imposing restrictive conditions, including weekday-only availability, limited viewing time, and advance notice requirements of at least one week. These restrictions effectively denied the Plaintiff the ability to inspect the records consistent with recognized transparency standards in cross-border motor carriage, including those reflected in 49 C.F.R. Part 376.

[18]   With knowledge that USD revenues and below-market exchange rates were being applied, the Defendants continued to withhold settlement documentation and currency and exchange-rate information. They further failed to provide promised fuel purchase invoices. The Plaintiff pleads that this conduct was deliberate, undertaken to prevent verification of his compensation, and independent of, and not merely incidental to, any single employee's role.

[19] In cross-border trucking, it is standard industry practice for owner-operators' percentage-based USD revenue to be used to settle fuel invoices for fuel purchased in the

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-26-00000007-0000

United States. Relying on representations made by Jeff regarding BVD volume fuel discounts, the Plaintiff consistently used the BVD fuel card and, because fuel prices were lower in the United States, purchased fuel there in the vast majority of instances. The Plaintiff reasonably relied on the Defendants' representations that the amounts deducted from his weekly settlements reflected the actual invoiced cost. Contrary to that understanding, the Defendants required that U.S. fuel purchases be settled in CAD at rates approximating the bank's selling rate, while simultaneously converting the Plaintiff's USD revenue into CAD at below-market exchange rates. This dual practice reduced the Plaintiff's contractual compensation and conferred a financial benefit on the Defendants by allowing them to avoid purchasing USD themselves, resulting in unjust enrichment to the Defendants and corresponding deprivation to the Plaintiff.

[20]   Although not expressly set out in the written Agreement, it was the understood practice among all owner-operators, including the Plaintiff, that JDW was responsible for payment of tolls, bridge and border crossings, lumpers, and all licensing costs, with the exception of insurance. By applying a below-market exchange rate to USD revenue, the Plaintiff effectively bore these expenses, as the resulting currency differential was sufficient to cover such costs. The Defendants were thereby unjustly enriched, having avoided payment of expenses they were contractually or customarily expected to bear, at the Plaintiff's expense.

## D.   October 7, 2024 Meeting with Jeff

[21]   Due to the fact that Victoria refused to produce the requested documents, the Plaintiff met with Jeff on October 7, 2024 and requested full settlement documentation,

Page 10

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

inference that the withheld records would confirm systematic underpayment, improper currency conversion, and unjust enrichment.

## IV.  CAUSES OF ACTION

### A.  Breach of Contract

[32]     The contract between the parties required JDW to pay the Plaintiff 75% of the gross revenue earned on each load. This obligation applied equally to revenue earned in USD.

[33]     JDW breached the contract by converting USD revenue to CAD at rates materially below prevailing bank buying rates, thereby underpaying the Plaintiff and retaining a portion of revenue owed to him.

[34]     In addition, JDW required fuel invoices for fuel purchased in the United States, which could be paid in USD, to be settled in CAD at rates approximating the bank's selling rate. This forced the Plaintiff to repurchase USD unnecessarily in order to operate, further reducing his contractual compensation.

[35]     These practices were not required by the contract, were inconsistent with industry standards, and constituted a systematic breach of JDW's obligation to pay the Plaintiff his agreed share of gross revenue.

### B.     Fraudulent Misrepresentation

[36]     The Defendants represented to the Plaintiff that almost all loads hauled by the Plaintiff were paid in CAD, when, in fact, a significant portion of those loads were paid in USD.

Page 14

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-26-00000007-0000

[37]    The Defendants further represented that, where USD-payments were received, currency conversion would be applied using prevailing RBC's exchange rates, when, in fact, materially lower, undisclosed rates were applied.

[38]    These representations were false and were made knowingly, or with reckless disregard for their truth, with the effect of reducing, and with knowledge that it would reduce, the Plaintiff's contractual entitlement to compensation.

[39]    The Plaintiff relied on these representations in continuing to perform services under the Agreement, having no independent access to customer invoices, currency information, or exchange-rate data by which to verify the accuracy of the Defendants' settlements.

[40]    The Defendants knew that the application of below-market exchange rates would directly reduce the Plaintiff's compensation and correspondingly increase the revenue retained by the Defendants.

[41] The Defendants intended for the Plaintiff to rely on their representations regarding currency and exchange rates, including the assurances that USD-revenue was rare and that RBC exchange rates would be applied. Knowing the Plaintiff's economic dependence and inability to independently verify compensation, the Defendants exploited this imbalance in bargaining power to reduce his contractual entitlement.

[42]    As a result of the Defendants' misrepresentations, the Plaintiff suffered losses in revenue, including cumulative losses over multiple years arising from the systematic underreporting of USD–paid loads and improper currency conversions.

Page 15

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-26-00000007-0000

### F.      Corporate restructuring, Amalgamation and Continuity

[25]    On November 29, 2025, the Plaintiff learned during a company safety meeting that the OLD JDW had undergone an amalgamation. Corporate profile records subsequently obtained by the Plaintiff confirmed that the OLD JDW became inactive on November 6, 2025 as a result of an amalgamation involving a newly incorporated Ontario numbered corporation formed shortly beforehand by directors associated with Andy Transport Inc., supporting an inference that the restructuring occurred in circumstances relevant to the management of existing liabilities.

[26]    The Plaintiff further discovered that, on December 17, 2024—shortly after the Plaintiff advised Jeff of his intention to commence legal proceedings—the OLD JDW, with Jeff's authorization, caused the registration of an Ontario corporation under the name "JDW International," identical to the trade name used by the OLD JDW.

[27]    Following the amalgamation, the trucking business continued without interruption, including the continued use of the same operating authorities, insurance arrangements, drivers, equipment, dispatch systems, management personnel, and customers. These facts demonstrate operational continuity between the OLD JDW and the NEW JDW and support a reasonable inference that the restructuring and use of similarly named entities were undertaken to preserve continuity of the business while obscuring responsibility for liabilities arising from the Plaintiff's compensation and settlement.

### G.    Industry Transparency Standards

Page 12

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

[28]     Approximately 99% of the Plaintiff's mileage occurred within the United States, as loads were routinely dispatched from and returned to the Defendants' Sarnia yard, located approximately eight miles from the United States border. In motor-carrier and owner-operator relationships involving U.S. operations and USD-paid freight, transparency and disclosure of settlement, revenue, and compensation records are recognized industry standards, including those reflected in the U.S. Truth-in-Leasing regulations (49 C.F.R. Part 376).

[29]     The Plaintiff does not plead a standalone breach of U.S. statutory law, but pleads those regulations as evidence of recognized industry standards of transparency applicable to cross-border motor carriage. The Plaintiff further pleads that these well-established standards of transparency, disclosure, and good faith are relevant to the interpretation of the Agreement and to the scope of the Defendants' contractual and common-law duties.

[30]     As a result of the Defendants' control over revenue information and refusal to produce settlement documentation, the Plaintiff was systematically deprived of the ability to verify gross revenue and could not reasonably detect the underpayments until January 2024. The Plaintiff pleads that the Defendants' continued withholding of records supports an adverse inference that the withheld documents would confirm systematic underreporting of gross revenue, improper currency conversions, fuel purchase, insurance premiums and other settlement deductions.

[31]     The Plaintiff pleads that the Defendants' ongoing refusal to produce complete settlement records, customer invoices, currency information, and exchange-rate data—despite knowing such records are essential to verifying compensation—justifies an adverse

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-26-00000007-0000

## C.    Negligent Misrepresentation (in the alternative)

[43]    In the alternative to fraudulent misrepresentation, the Defendants owed the Plaintiff a contractually implied duty of care in making representations regarding the currency of customer payments and the exchange rates applied to USD-revenue, given the Plaintiff's economic dependence and the Defendants' exclusive control over revenue information.

[44]    The Defendants breached that duty by making inaccurate representations carelessly or negligently, without taking reasonable steps to verify their accuracy or to ensure that the Plaintiff received truthful and complete information regarding his compensation, upon which the Plaintiff reasonably relied to his detriment.

## D.    Implied Duty to Disclose

[45]    The Plaintiff pleads that the Agreement contains an implied contractual term, arising by business efficacy and obviousness, requiring the Defendants, when circumstances arise that reasonably call the accuracy of compensation into question and a request for verification is reasonably justified, to disclose the information reasonably necessary for the Plaintiff to verify his contractual entitlement to 75% of gross revenue, including customer invoices, the currency in which freight was paid, exchange rates applied, and settlement calculations.

[46]    Without such disclosure in those circumstances, the express compensation provision in the Agreement is commercially unworkable and incapable of verification, rendering the Plaintiff's entitlement to a percentage of gross revenue illusory. By refusing to provide the requested information, the Defendants breached this implied contractual term.

Page 16

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-26-00000007-0000

## E.  Unjust Enrichment (Pled in the Alternative and in Addition to Accounting Relief)

**An enrichment**

[47]    The Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein in relevant issues.

[48]    By applying exchange rates approximately 10% below prevailing RBC's rates to USD-paid loads, the Defendants retained approximately 10% of the USD revenue otherwise payable to the Plaintiff. In addition, the Defendants benefited by retaining and applying USD-revenues at exchange rates materially below prevailing bank rates, thereby obtaining access to USD at a cost lower than market rates and using those funds to offset their own USD-expenses.

[49]    The Defendants used, or were able to use, the retained USD to pay their own U.S.-denominated operating expenses, thereby avoiding the need to purchase USD from a financial institution at prevailing exchange rates and obtaining a financial advantage beyond mere underpayment of the Plaintiff.

**Corresponding deprivation**

[50]    The Plaintiff was deprived of the full value of the USD - revenue earned through his services and of the benefit of proper market-based currency conversion applied to that revenue. He also suffered a corresponding deprivation through reduced compensation and increased operating costs.

**Absence of juristic reason**

Page 17

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-26-00000007-0000

including customer invoices, BVD invoices, currency information, and the exchange rates applied, in order to verify that he was receiving his contractual entitlement to 75% of gross revenue.

[22]   Jeff refused to provide the requested documentation and stated that he would not disclose the information. Jeff further implicitly stated that, if the Plaintiff did not accept the Defendants' pay practices without further inquiry, the Plaintiff could seek work elsewhere. The Plaintiff pleads that, in the context of the Plaintiff's economic dependence, this statement constituted an implicit threat of termination.

[23]   Jeff knew, or had reason to know, that the Plaintiff was economically dependent on the Defendants, derived virtually all of his income from the Defendants, and that refusal to provide documentation would prevent the Plaintiff from verifying his compensation. Despite this knowledge, Jeff refused disclosure. The Plaintiff pleads that the refusal was deliberate and not based on administrative or operational constraints.

### E.   Economic Dependence

[24]   At all material times, the Plaintiff derived virtually all of his income from the Defendants and, due to prevailing market conditions and ongoing financial obligations, could not reasonably cease work or commence litigation earlier without severe financial hardship. The Defendants knew, or ought to have known, of the Plaintiff's economic dependence, including as expressly explained by the Plaintiff during the October 7, 2024 meeting. In these circumstances, the Plaintiff reasonably feared termination or loss of work if he pressed further for disclosure, particularly in light of Jeff's implicit statement that the Plaintiff could seek work elsewhere if he did not accept the Defendants' pay practices without further inquiry.

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

[51]   There was no juristic reason for the Defendants to retain these benefits, as the contract did not authorize below-market currency conversion or forced CAD settlement of fuel invoices that could be paid in USD. The Plaintiff did not agree to undisclosed exchange-rate manipulation or to subsidize the Defendants' USD operating costs.

[52]   In the alternative to, or in addition to, contractual damages and accounting relief, the Defendants were unjustly enriched at the Plaintiff's expense and must disgorge all benefits obtained through the improper retention and use of USD-revenue.

**F.    Joint Participation and Personal Liability**

[53]   The Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein relevant to this section.

[54]   The individual Defendants are sued for their own acts and omissions, including their personal participation in misrepresentations, concealment of material facts, and obstruction of statutory and contractual disclosure obligations. Their liability is pleaded independently of any corporate veil or alter ego doctrine.

[55]   Each individual Defendant engaged in conduct that went beyond mere corporate oversight and constituted independent tortious acts, such that each is personally liable for their own tortious conduct, independent of the corporation.

[56]   Jeff expressly and definitively refused to provide settlement documentation requested by the Plaintiff, including customer invoices, currency information, and exchange rates applied. Victoria imposed restrictive and impractical conditions on document review that were designed to prevent meaningful verification, including limiting

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-26-00000007-0000

review to a small number of loads, restricting meetings to short time windows during working hours, and refusing to compile records in a manner that would allow comprehensive review. Despite repeated attempts by the Plaintiff to schedule further review, access was delayed or refused.

[57]     The Plaintiff explained to the Defendants' accounting staff that, because his compensation was calculated as a percentage of gross revenue, he could not verify the accuracy of his pay without access to complete settlement documentation, including customer invoices, the currency in which freight was paid, and the exchange rates applied.

[58]     The Plaintiff requested that such settlement documentation be provided on an ongoing basis. He was advised that the provision of this information was subject to internal approval and direction from management.

[59]     Following consultation with Jeff and Victoria, no further settlement documentation, currency information, or exchange-rate details were provided to the Plaintiff. Thereafter, the Plaintiff's inquiries regarding compensation and currency were not substantively answered, while routine operational communications continued.

[60]     At all material times, Jeff and Victoria knew, or ought to have known, that a substantial portion of the Defendants' loads were paid in USD, that exchange rates materially below prevailing bank rates were applied, and that the Plaintiff was contractually entitled to receive 75% of gross revenue. They further knew that, without access to settlement documentation, the Plaintiff had no practical means to detect or quantify underpayments.

Page 19

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

[61]    The Plaintiff pleads that the continued withholding of settlement documentation and currency information occurred pursuant to the direction, authorization, or approval of Defendants Jeff and Victoria, who exercised control over disclosure of compensation records and intended to prevent verification of the Plaintiff's contractual entitlement.

[62]    The Plaintiff pleads that the Defendants, through their officers, employees, and agents, deliberately retained exclusive control over revenue data, currency conversion calculations, and settlement documentation in order to prevent the Plaintiff from discovering the true gross revenue generated under the Agreement and the true deductions applied. The Defendants further directed that dispatch and administrative personnel not disclose currency or exchange-rate information to owner-operators, on the stated basis that providing such information was "taking too much time."

**G.    Bad Faith Performance ●f C●ntract and Breach ●f the Duty ●f H●nest Performance**

[63]    The Plaintiff reallcgcs and incorporates by reference all preceding paragraphs as though fully set forth herein in issues relevant to this section.

[64]    The Defendants exercised their contractual rights and discretionary powers in bad faith and in breach of the duty of honest performance by deliberately withholding settlement documentation, suppressing currency and exchange-rate information, and providing misleading explanations regarding the calculation of the Plaintiff's compensation.

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-26-00000007-0000

[65]    On October 7, 2024, Jeff expressly stated words to the effect that if the Plaintiff accepted the Defendants' pay practices without further inquiry, he "had a load for him". The Plaintiff pleads that, in context and given the Plaintiff's economic dependence, this statement conveyed that continued work was conditional on acceptance of the Defendants' non-transparent pay practices.

[66]    At all material times, the Defendants knew or ought to have known that the Plaintiff was economically dependent on them, derived virtually all of his income from the Defendants, and operated exclusively under the Defendants' operating authorities. The Defendants knowingly leveraged that dependence to suppress disclosure and prevent the Plaintiff from discovering underpayments.

[67]    The Defendants' conduct was not an honest exercise of contractual discretion. It constituted a deliberate and dishonest course of conduct designed to conceal material information, avoid accountability, and retain revenue properly owing to the Plaintiff, in breach of the duty of honest performance and the obligation to perform the Agreement in good faith.

[68]    As a result of the Defendants' bad-faith conduct, the Plaintiff suffered ongoing financial loss, was deprived of the ability to detect underpayments in a timely manner, and was compelled to continue performing under the Agreement without the transparency necessary to protect his contractual rights.

## H.    Accounting

[69]    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein respecting relevant issues.

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

[70]   The Plaintiff is unable to accurately quantify his losses without an accounting. The Plaintiff pleads that the necessity for an accounting arises directly from the Defendants' conduct.

[71]   The corporate Defendant and the individual Defendants acted in concert and with a common understanding to withhold settlement documentation and currency information in order to prevent the Plaintiff from verifying his compensation. In these circumstances, the Plaintiff is entitled to an equitable accounting and payment of all amounts found owing.

## V.   LIMITATION PERIOD SUSPENDED UNDER FRAUDULENT CONCEALMENT AND DISCOVERABILITY

[72]   The Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein in relevant issues.

[73]   As a result of the above pleaded concealment, the Plaintiff did not discover, and could not reasonably have discovered, the underpayments or the use of undisclosed and below-market exchange rates until January 16, 2024, when the existence of USD-paid loads and the exchange rate applied was first disclosed in writing.

[74]   The Plaintiff pleads that any applicable limitation period is suspended by reason of fraudulent concealment, the discoverability principle, and the Defendants' continuing breach, as the Defendants' deliberate non-disclosure prevented the Plaintiff from knowing the material facts giving rise to the claim.

## VI.  RESERVATION OF RIGHTS

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-26-00000007-0000

[75]     The Plaintiff cannot fully quantify his damages until the Defendants produce the records and documents within their exclusive control.

[76]     The Plaintiff reserves the right to continue under the ordinary procedure pursuant to Rule 76.02(4) should the quantum of damages exceed the monetary limit of Rule 76 or should the issues prove unsuitable for simplified procedure.

[77]     The Plaintiff reserves the right, with leave of the Court if required, to amend this Statement of Claim, in accordance with the *Rules of Civil Procedure*, to add additional parties, including corporate entities or individuals, whose involvement in the matters pleaded herein becomes known through disclosure, accounting, or discovery. At present, certain information relevant to the full scope of responsibility remains uniquely within the possession and control of the Defendants, including entities or persons involved in dispatch, accounting, settlement, or payment processing.

[78]     The Plaintiff pleads that the Defendants conditioned continued dispatch and income on the Plaintiff's acceptance of undocumented compensation practices and the Plaintiff's refraining from asserting statutory or contractual rights. Any termination, suspension of dispatch, or other adverse treatment arising from the Plaintiff's requests for disclosure or enforcement of lawful entitlements would constitute retaliatory conduct, economic coercion, and bad-faith performance of the Agreement, giving rise to further damages. The Plaintiff expressly reserves the right to seek interlocutory and permanent injunctive relief, declaratory relief, and additional damages in the event of such retaliation, including relief restraining the Defendants from terminating, suspending, or penalizing the Plaintiff for exercising legal rights, pending the ultimate resolution of the dispute on the merits and in accordance with applicable law.

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

VII. Retaliatory Termination / Dependent Contractor Status

[79] At all material times, the Plaintiff was a dependent contractor whose livelihood was derived almost exclusively from the Defendants. The Plaintiff had no meaningful ability to replace the income provided under the Agreement without significant financial hardship and disruption.

[80] The Defendants were aware, or ought to have been aware, of the Plaintiff's economic dependence, including the Plaintiff's financial obligations and reliance on the continuation of dispatch and loads assigned by the Defendants.

[81] Following the Plaintiff's requests for disclosure of settlement documentation, currency conversion data, and verification of gross revenue calculations, the relationship between the parties deteriorated.

[82] The Plaintiff pleads that the termination of the Plaintiff's engagement was effected in response to, or in substantial part motivated by, the Plaintiff's inquiries into his contractual entitlements and assertion of his legal rights to transparency and accurate compensation.

[83] The termination was carried out in a manner inconsistent with the Defendants' duty of honest performance and good faith in contractual dealings, and constitutes retaliatory conduct within the context of a dependent contractor relationship.

[84] The Plaintiff pleads that such retaliatory dismissal deprived him of continued income, aggravated his financial vulnerability, and forms part of a broader pattern of bad faith conduct giving rise to aggravated and punitive damages.

## VIII. RELIEF SOUGHT

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice
**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

[85] The Plaintiff claims judgment against the Defendants jointly and severally.

## A. Compensatory damages

[86] The Plaintiff claims compensatory damages, including but not limited to unpaid contractual compensation, to be assessed following an accounting of records within the Defendants' exclusive control, including:

a) unpaid amounts representing the Plaintiff's entitlement to 75% of gross revenue, including losses arising from improper currency conversion and undisclosed exchange rate practices;

b) damages arising from concealment, misrepresentation, and failure to provide accurate settlement documentation, which prevented the Plaintiff from verifying or mitigating losses; and

c) damages arising from the termination of the Plaintiff's engagement, including loss of income during the reasonable notice period applicable to a dependent contractor relationship; and

d) pre-judgment and post-judgment interest pursuant to the Courts of Justice Act.

## B. General damages

[87] The Plaintiff claims general damages for mental distress arising from the Defendants' bad faith conduct in the performance and termination of the Agreement. The Defendants exercised exclusive control over the Plaintiff's livelihood and compensation, withheld material financial information, and failed to act in a manner consistent with honesty and

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-26-00000007-0000

good faith in contractual performance. As a result, the Plaintiff suffered anxiety, sleep disturbance, and emotional distress beyond the ordinary stress associated with commercial relationships, particularly in light of the Plaintiff's dependent contractor status and economic vulnerability.

## C. Aggravated damages

[88] The Plaintiff claims aggravated damages arising from the manner in which the Defendants conducted themselves, including:

a) deliberate concealment of material compensation and settlement information;

b) misleading representations regarding currency of payment and exchange rate application;

c) retaliatory termination or withdrawal of work following the Plaintiff's requests for disclosure and enforcement of contractual rights; and

d) conduct designed to suppress inquiry into compensation practices and prevent verification of earnings.

## D. Punitive damages

[89] The Defendants' conduct was high-handed, deliberate, and in marked departure from ordinary commercial standards. The Plaintiff pleads a systematic pattern of concealment, misrepresentation, and retaliatory conduct in the administration and termination of a dependent contractor relationship. Punitive damages are necessary to denounce and deter such conduct and to reflect the Court's disapproval of bad faith contractual performance.

## E. Elevated costs

Page 26

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-26-00000007-0000

[90] The Plaintiff seeks elevated costs on the basis that the Defendants' refusal to disclose relevant records and continued concealment of compensation information materially increased the complexity and cost of this litigation.

### F. Declaratory relief

[91] A declaration that the Plaintiff is entitled to an accounting and full disclosure of all records necessary to determine the Plaintiff's contractual entitlement.

[92] An order for disgorgement of all benefits retained by the Defendants through improper currency conversion practices and underreporting of gross revenue.

[93] A declaration that any applicable limitation period is suspended by reason of fraudulent concealment and discoverability.

[94] Costs of this action.

[95] Such further and other relief as this Honourable Court deems just.

### IX. PROPOSED PLACE OF TRIAL

[96] The Plaintiff proposes Sarnia as the place of trial.

Date: January 11, 2026

Marek Petrykowski
Litigant in Person
41 Kings Heights Dr. SE
Airdrie, AB T4A 0E6
Email: petrykowski.marek@gmail.com
Tel: 226-235-8773

Electronically filed / Déposé par voie électronique : 16-Apr-2026
Sarnia Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-26-00000007-0000

MAREK PETRYKOWSKI v. JDW INTERNATIONAL INC., ET AL

(Plaintiff)          (Defendants)

*ONTARIO*

SUPERIOR COURT OF JUSTICE

SARNIA COURTHOUSE

**AMENDED**
**STATEMENT OF CLAIM**

PLAINTIFF:

Marek Petrykowski

41 Kings Heights Dr.

Airdrie, AB T4A 0E6

Tel.: 226-235-8773

petrykowski.marek@gmail.com

Page 28